STATE of Missouri, Respondent,

v.

James E. MAYNARD, Appellant.

No. WD 36162.

Missouri Court of Appeals,
Western District.

March 18, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1986.
Application to Transfer Denied
June 17, 1986.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., SHANGLER, J., and MARTIN, Special Judge.

PRITCHARD, Presiding Judge.

By verdicts of a jury appellant was found guilty of four felony offenses, and his punishment was assessed by it as follows: Count I, forcible rape, life imprisonment; Count II, forcible sodomy, life imprisonment; Count III, burglary, fifteen years imprisonment; and Count IV, armed criminal action, life imprisonment. In accordance with the verdicts, the court sentenced appellant to imprisonment in the custody of the Missouri Division of Adult Institutions, the sentences to run consecutively.

The sufficiency of the evidence to sustain the convictions is not questioned. Briefly

stated, in the early morning hours of August 4, 1983, the victim was in bed at her home at 1114 West 41st Terrace, Kansas City, Missouri, when she was awakened by a noise which she thought was her cat. She continued to listen, hearing creeping noises, and eventually appellant stepped into the doorway and told her not to move or he would kill her. Appellant, whom she identified in court, then performed cunnilingus on her, then assaulted her breasts, and performed sexual intercourse on top of her. He then rolled over to her left side and put a pocketknife with about a three and a half inch blade against her neck. He then rolled to his back and pulled the victim on top of him and again performed sexual intercourse with her. Appellant went to sleep, and the victim was able to extricate herself and go to a QuikTrip store where she called the police, who came immediately and surrounded the victim's home. Two officers entered the bedroom and found appellant sleeping on the bed. They grabbed him and lifted him from the bed. He broke loose and headed toward the door but ran into the other officers, who threw him to the bathroom floor and hit him with pistols in subduing him. Appellant was taken to Truman Medical Center for his injuries and then to police headquarters.

Appellant's first point is that the trial court erred in granting leave to the state (on the day of trial) to amend the charge of Count IV, armed criminal action, from the language of use of a "deadly weapon" to that of the use of a "dangerous instrument". As noted above, the victim testified that appellant placed a 3½ inch blade of a pocketknife against her neck. RSMo Section 571.010(9), (Cum.Supp.1982) defines a knife as not including an ordinary pocketknife with a blade no more than 4 inches in length. The state apparently concluded, on the basis of evidence which it had from the victim, that it could not prove use of a "deadly weapon" under § 556.061.9, defined as a firearm, a switchblade knife, dagger, billy, blackjack or metal knuckles, but could prove use of a "dangerous instru-

ment", meaning, under § 556.061(7), "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." The state thus sought to amend the armed criminal action charge to use of a dangerous instrument, which was granted.

Appellant claims that this amendment deprived him of a defense to the original charge, although conceding in his brief that the amendment did not operate to charge a different offense.

Section 571.015, subd. 1, RSMo 1978, defines armed criminal action as the commission of "any felony under the laws of this state by, with, or through the use, assistance, or aid of a *dangerous instrument* or *deadly weapon* * * *." [Italics added.] Thus, the offense may be committed by the use of either of the italicized methods.

In *State v. Mace,* 665 S.W.2d 655, 658[1] (Mo.App.1984), an amendment was permitted from the allegation that an assault was committed " 'in that ... defendant knowingly caused physical injury' " to the victim by striking her with his fists to " 'in that defendant recklessly caused serious physical injury to Shelby Mace by striking her with his fists.' " The court held that the amendment was merely a change in the manner or method by which the offense of assault was committed. Compare also *State v. Higgins,* 592 S.W.2d 257, 258 (Mo. App.1979); and *State v. Warfield,* 507 S.W.2d 428, 430–431 (Mo.App.1974), where the charges were stealing without consent, which were amended to charges of stealing by deceit, held to be proper because the amendments did not charge new offenses, hinder defendants in the preparation of defenses or require them to meet evidence which they might not have anticipated. Here, the record shows that defense counsel was aware of the length of the knife blade, and that it was a pocketknife. The state was entitled to correct its allegation to state that the armed criminal action offense was committed by a dangerous in-

strument instead of a deadly weapon. Otherwise, no indictment or information could ever be amended to accord with the proof.

An information may be amended under Rule 23.08, even if it is insufficient to charge an offense. *State v. Toney*, 680 S.W.2d 268, 272[1] (Mo.App.1984); and the there cited case of *State v. Umfleet*, 538 S.W.2d 55, 58[1] (Mo.App.1976). As the state suggests, such a permitted amendment would serve to deprive the defendant of a defense directed toward the original information, i.e. a motion for judgment of acquittal. Here, the situation is similar. Appellant was deprived of the defense that the pocketknife used was not a deadly weapon, since its blade was not more than 4 inches in length. He had to go to trial on the charge that he used a dangerous instrument in committing the underlying felonies. If appellant's contention were sustained, the state could never amend an insufficient information, an untenable position. Appellant's first point is overruled.

Point II charges error in the trial court's overruling of appellant's motion to suppress evidence of comparisons made with hair, blood and saliva because the evidence was unlawfully seized from him. It appears from the evidence that on arrival at police headquarters, appellant was given a blood-alcohol test which showed it to be .122 percent. About an hour later, four police officers entered appellant's cell to obtain from him hair, blood and saliva standards for comparison. Investigator Parker read him "seizure warnings" from a consent form which stated, "I hereby freely and voluntarily give my consent to officers of the Kansas City, Missouri, Police Department" to conduct a search of my body and seize pubic and head hair standards, saliva and blood samples. The form further stated: "I understand that the officers have no search warrant authorizing this search and that I have a constitutional right to refuse permission for them to conduct the search and any evidence may be used against me in court." Parker asked appellant if he understood his constitutional rights and if he would consent to waive them. He answered "yes" and said, "I'll be willing to sign it." Parker testified that he asked questions about the consent form but exhibited no hesitancy in signing it.

It is claimed that the evidence was seized through illegal force in that appellant, when arrested, was intoxicated and severely beaten by police, was unable to exercise his independent free will and feared continued beatings if he refused to comply with the officers' requests.

Although the state concedes that appellant had been drinking and his blood-alcohol test was slightly above the legal limit for operating a motor vehicle about an hour before the consent form was signed, neither Parker nor officer Sayles detected any signs of intoxication at the time appellant signed the form. Parker testified that appellant's eyes were bloodshot, but his pupils appeared to be normal, he talked normally, and appeared to have all his faculties, and being close to him, he did not detect the odor of alcoholic beverages. The evidence falls short of a requirement that the trial court find the consent to be invalid as a matter of law by reason of intoxication. See *State v. Heather*, 498 S.W.2d 300, 304[5] (Mo.App.1973); *State v. Smith*, 342 S.W.2d 940, 941 (Mo.1961); and *State v. Berry*, 526 S.W.2d 92, 100 (Mo.App.1975).

When appellant was lifted from the victim's bed at the scene, he attempted to flee. Undoubtedly, the arresting officers hit him on the head, threw him to the bathroom floor, and injured him somewhat. Officer Sayles testified that no more physical force was used than was necessary to subdue appellant. Parker testified that at police headquarters appellant appeared to be in a little pain but not a great deal, and complained about his injuries two or three times. There is no evidence of injuries to appellant after his initial arrest. There is

no prohibition against a seriously injured person making a voluntary confession to the commission of a crime (or as here, voluntarily consenting to a search of his person), *State v. Granberry*, 484 S.W.2d 295, 300[10] (Mo. banc 1972), unless there is evidence to indicate that he was suffering severe pain or that he did not fully understand the subject matter of the conversation. Cf. *State v. Glenn*, 429 S.W.2d 225, 232[7] (Mo. banc 1968). There is no evidence, other than his testimony, that appellant had reason to fear repercussion from the officers if he did not sign the consent to search. In short, the evidence was sufficient for the trial court to determine that appellant's consent to the search was knowingly and voluntarily given, and it did not err in overruling the motion to suppress evidence. Point II is overruled.

■ During the rape, appellant told the victim that he had talked with her before and he knew she could not see very well because she did not have her glasses on, which she usually wore when she was working at a restaurant. In final argument, the prosecutor stated that appellant told the victim, " 'That hurt, didn't it? Now you know I'm serious', and the rape continues, still talking to her, telling her, 'Gee, you know, I've been watching you.' " Defense counsel objected on the ground that the argument misstated the evidence, stating what appellant had told the victim. The court overruled the objection on the basis that in final argument, it was going to allow a certain amount of latitude. Although the argument was not precisely accurate, there was a fair inference that appellant had watched the victim at her work because he had talked with her. Some latitude is allowable to the trial court in permitting final argument, considering the inferences to be drawn. That contact with the victim was followed by appellant's breaking into her home, allowing another inference from his knowing her, that he had selected her for the commission of the offense. No prejudice to appellant appears, and Point III raising the issue is overruled.

The judgment is affirmed.

All concur.