STATE ex rel. Barry K.
BAKER, Relator,

v.

The Honorable Larry KENDRICK,
Respondent.

No. SC 85653.

Supreme Court of Missouri,
En Banc.

May 25, 2004.

Rehearing Denied July 1, 2004.

Deborah B. Wafer, Teoffice E. Cooper, Cynthia A. Dryden, Office of the Public Defender, St. Louis, for Relator.

Joseph S. Dueker, Douglas J. Sidel, Prosecuting Attorneys Office, Clayton, for Respondent.

ORIGINAL PROCEEDING
IN PROHIBITION

LAURA DENVIR STITH, Judge.

This case comes to the Court following a trial in which the jury found Relator, Barry Baker, guilty of first-degree murder but was unable to agree on punishment. Respondent ordered a new penalty-phase trial only, believing such a retrial was permitted and required by this Court's decision in *State v. Whitfield,* 107 S.W.3d 253 (Mo. banc 2003), decided after trial but before Respondent had ruled on Relator's post-trial motions and before sentencing. Relator filed a petition for writ of prohibition in this Court. This Court issued its preliminary writ, which is now made absolute.

Respondent's attempt to grant Relator's motion for new trial came after the motion had been denied automatically under Rule 29.11(g) and was of no effect. Because this case was tried after the United States Supreme Court decided *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the principles set out in *Ring* must be applied to it. As stated in *Whitfield,* this means that, where, as here, the jury was unable to agree on punishment and the record fails to show that the jury found all facts necessary to impose a sentence of death, the trial court's only authority was to enter a sentence of life imprisonment without possibility of probation or parole.

## I. PROCEDURAL HISTORY AND AUTHORITY TO GRANT MOTION FOR NEW TRIAL

### A. Trial Proceedings.

Barry Baker was found guilty by a jury of the first-degree murder of Trisha Blue. Because the State was seeking the death penalty, a penalty-phase trial was then held, during which the parties presented evidence concerning whether Mr. Baker should be sentenced to death or to life in prison without possibility of probation or parole. Section 565.030.4 sets out the steps the jury must follow if it is to render a verdict of death.[1]

On March 24, 2003, the jury in Mr. Baker's case returned a verdict stating that it had unanimously found the presence of four statutory aggravating factors beyond a reasonable doubt but that the jurors were "unable to decide or agree upon the punishment." The record, however, fails to show that the jury completed the other steps necessary to impose a death sentence, including considering whether mitigating circumstances outweighed those in aggravation, before becoming deadlocked, as required by Ring, Whitfield, and section 565.030.4(3), RSMo Supp.2003. Because the jury was unable to reach a decision on punishment, Respondent discharged the jury.

### B. Rulings on Post–Trial Motions.

Under Rule 29.11(b), a defendant has 15 days in which to file a motion for new trial, but the trial court can grant up to 10 additional days in which to file the motion. The court did so here, making the motion due on or before April 18, 2003. On April 16, 2003, Mr. Baker timely filed his motion alleging various trial errors and asking Respondent alternatively to enter an acquittal, to enter a sentence of life imprisonment, to grant him a new trial, or to grant him a new penalty-phase trial.

Under Rule 29.11(g), "[i]f the motion for new trial is not passed on within ninety days after the motion is filed, it is denied for all purposes." In this case, the 90 days for ruling on Mr. Baker's motion for new trial ended on July 15, 2003. On May 19, 2003, Respondent set the motion for new trial for hearing on June 12, 2003, and scheduled sentencing for June 19, 2003. But, Respondent did not rule on Relator's motion on that date or any other. Instead, when this Court decided State v. Whitfield, 107 S.W.3d 253 (Mo. banc 2003), on June 17, 2003, Mr. Baker filed what he labeled as a "supplemental" motion in which he asserted that the court was required by

---

1. The pertinent portion of section 565.030.4 provides:

   The trier shall assess and declare the punishment at life imprisonment without eligibility for probation, parole, or release except by act of the governor:

   (1) If the trier finds by a preponderance of the evidence that the defendant is mentally retarded; or

   (2) If the trier does not find beyond a reasonable doubt at least one of the statutory aggravating circumstances set out in subsection 2 of section 565.032; or

   (3) If the trier concludes that there is evidence in mitigation of punishment, including but not limited to evidence supporting the statutory mitigating circumstances listed in subsection 3 of section 565.032, which is sufficient to outweigh the evidence in aggravation of punishment found by the trier; or

   (4) If the trier decides under all of the circumstances not to assess and declare the punishment at death. If the trier is a jury it shall be so instructed.

   RSMo Supp.2003. This version of the statute differs from that discussed in Whitfield, 107 S.W.3d at 258–59. A new step 1 is added to address situations in which the defendant is found to be mentally retarded, and step 2 in Whitfield is eliminated. Step 1 in Whitfield is step 2 now. Steps 3 and 4 in the new statute are the same as in Whitfield.

*Whitfield* to enter a sentence of life in prison without the possibility of probation or parole. Two days later, on June 19, 2003, Mr. Baker filed an amended supplemental motion asking the court for the same relief. Rather than rule on the pending motion for new trial filed on April 16, 2003, Respondent then gave the parties until August 1, 2003, to file supplemental briefing addressing how *Whitfield* might apply to Mr. Baker. During the course of this briefing, the July 15, 2003, deadline for ruling on defendant's April 16 motion for new trial passed, and that motion was overruled by operation of Rule 29.11(g).

■ Respondent heard arguments about *Whitfield* on August 13, 2003. On September 11, 2003, he entered a judgment that did not mention the April 16, 2003, motion for new trial. Instead, he took up and purported to grant Mr. Baker's June 17 and June 19 motions, but did so by granting Mr. Baker a new trial, even though those motions asked only for entry of a life sentence based on *Whitfield*. In any event, the "supplemental" motions did not extend the July 15, 2003, deadline as they were filed after the time the motion for new trial was required to be filed. Supplemental motions filed after the time the motion for new trial is due are a nullity. *State v. Mucie,* 448 S.W.2d 879, 890 (Mo.1970). The trial court had no authority to act on any motion for new trial or supplement after July 15, 2003. Mr. Baker then filed his petition in this Court, asking the Court to prohibit Respondent from holding a new trial.

## II. ANALYSIS

■ Respondent argues that his entry of an order for a new trial on September 11, 2003, was within his authority because the jury did not return a penalty-phase verdict and, thus, Rule 29.13(b) is inapplicable. Rule 29.13(b) states: "The court may, with the consent of the defendant, order a new trial of its own initiative before the entry of judgment and imposition of sentence but not later than thirty days after the verdict of the jury is returned." Rule 29.13(b).

This Court disagrees. The jury returned a verdict form stating that it was unable to agree upon punishment. While the parties disagree as to whether this constitutes a "verdict" as that term is used in Rule 29.13(b), just quoted, under either interpretation of the term "verdict," Rule 29.13(b) provided no basis for Respondent to order a new trial. For, if the jury's return of the form, which was labeled "Verdict," constituted its verdict under Rule 29.13(b), then Respondent had only 30 days thereafter in which to order a new trial *sua sponte.* It is undisputed that Respondent did not do so. If the form the jury returned is not considered a "verdict," then Rule 29.13(b) simply is not applicable. And, in any event, by the time Respondent ruled, defendant had made it very clear that he did not consent to a new trial.

But, Respondent argues, this Court's decision in *Whitfield* itself provided the "trigger" or authority for granting a new trial. Respondent so concluded because he believed that, while *Whitfield* prohibited him from entering a judgment of death, it did not mandate entry of a life sentence where the jury did not agree on punishment except in the five cases that *Whitfield* noted were on collateral review at the time of its decision. *See Whitfield,* 107 S.W.3d at 269 n. 17. Because he had not yet entered a sentence of life or death, and because Mr. Baker's case was not on collateral review and so was not one of the cases listed in *Whitfield,* Respondent believed he had the authority to order a new penalty-phase trial and did so. If he had no authority to order this new penalty-phase trial, he argues, it is the equivalent of saying he had

no authority to comply with the requirements of *Whitfield* even though it is the relevant governing case.

Respondent's options were not so limited. First, as noted, nearly 30 days yet remained in which he could have ruled on Relator's motion for new trial after *Whitfield* was decided. While the Court appreciates Respondent's desire to have full briefing on that case's potential application before ruling, nothing in that decision or in relevant case law provides that the decision of a governing case during the pendancy of a motion for new trial will start the running of a new 90–day period or otherwise authorizes the trial judge to act outside the time periods set out in Rules 29.11(g) and 29.13(b). The trial court acted in excess of its jurisdiction in granting a new trial once the time periods for doing so had lapsed.

Second, Respondent could comply with *Whitfield* by granting the relief requested by Mr. Baker—sentencing him to life in prison. There was no time constraint on his so doing after *Whitfield* was decided.

Respondent alternatively argues that *Whitfield* does not apply to Mr. Baker. In so construing *Whitfield,* Respondent relies solely on those portions of *Whitfield* addressing whether *Whitfield* will apply to cases on *collateral review*. This Court noted that on *preliminary review* of its records there appeared to be only five such cases *on collateral review* when *Ring* was decided.[2] But, *Ring* was decided on June 24, 2002, while this case was still

pending in the trial court—indeed, long before it was even tried.

*Whitfield* was very specific that it applied to cases that were pending at the time that *Ring* was decided. In fact, it noted, *id.* at 268, that *Ring had* to be applied to pending cases under *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), in which the Supreme Court held that a new rule for the conduct for criminal prosecutions must be "applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith,* 479 U.S. at 328, 107 S.Ct. 708.

This did not assist Mr. Whitfield, for his "appeal was not pending on direct review [when *Ring* was decided]." *Whitfield,* 107 S.W.3d at 265–66. By contrast, the instant case was pending in the trial court, and was not yet final, when *Ring* was decided in 2002, and, for that matter, when *Whitfield* was decided in June 2003. Thus, *Ring* fully applies to it, and, as *Whitfield* expressly held, "under *Griffith, Ring* must be applied to all future death penalty cases and to those not yet final or still on direct appeal." *Whitfield,* 107 S.W.3d at 268.

As Respondent acknowledges, if *Whitfield* is applicable, then where, as here, the jury was unable to reach agreement on punishment and the verdict that was returned did not show that the jury found all facts necessary for the imposition of death, Respondent's only option was to impose a sentence of life. *Id.* at 270.

---

**2.** *Whitfield,* 107 S.W.3d at 268–69 ("Thus, only those few Missouri death penalty cases that are no longer on direct appeal and in which the jury was unable to reach a verdict and the judge made the required factual determinations and imposed the death penalty will be affected by the retroactive application of *Ring* ... to cases on collateral review"). This comment did not purport to deny review if, on further review, it was determined that

*Whitfield* also applied to a limited number of additional cases on collateral review that were not then brought to the Court's attention, and, to the extent that isolated sentences could be so interpreted, they must be read in the context, and the entire discussion read in light of the additional holding that *Griffith* requires *Ring* to be applied to all cases then pending or not yet final.

For these reasons, the writ is made absolute.[3]

WHITE, C.J., WOLFF and TEITELMAN, JJ., concur.

PRICE, J., concurs in separate opinion filed.

LIMBAUGH, J., dissents in separate opinion filed.

BENTON, J., concurs in opinion of LIMBAUGH, J.

PRICE, Judge, concurring.

I concur in the result reached by the majority. Rule 29.11(g) provides that the trial court has 90 days to determine whether to grant or deny a new trial otherwise the motion is "denied for all purposes."

Baker filed his motion for a new trial on April 16, 2003. The trial court did not rule on it until September 11, 2003. After July 15, 2003, however, the motion was deemed "denied for all purposes" because of the expiration of the 90 day deadline in Rule 29.11(g). The trial court accordingly lacked authority after that date to order a new trial. *See State ex rel. Parks v. Barker,* 567 S.W.2d 130, 133 (Mo. banc 1978) (under rule comparable to 29.11(g), "since the granting of a new trial . . . was beyond the time given the trial court for such action, the action was beyond the court's jurisdiction and prohibition [was] a proper remedy").

As the preliminary writ states, the only act that the trial court had authority to take after the expiration of 90 days was "to impose sentence in said case." At this time, it is unnecessary to go further than to make the preliminary writ, as written, absolute.

LIMBAUGH, Judge, dissenting.

I respectfully dissent.

In *State v. Whitfield,* 107 S.W.3d 253 (Mo. banc 2003), this Court held that a death sentence imposed by the trial court after the jury was unable to arrive at a verdict in penalty phase was unconstitutional because it violated defendant's right to be sentenced on certain statutory factual determinations that must be made by a jury, *id.* at 271. The remedy, according to a 4–3 majority of the Court, was the mandatory and ministerial imposition of a life sentence, not a new penalty phase trial at which a jury, having made the factual determinations required under *Whitfield,* would decide anew between a life sentence or a death sentence. The majority explained that the disposition was controlled by section 565.040.2, RSMo, *id.* at 271–72, which states in pertinent part:

In the event that any death sentence imposed pursuant to this chapter is held to be unconstitutional, the trial court which previously sentenced the defendant to death shall cause the defendant to be brought before the court and shall sentence the defendant to life imprisonment without eligibility for probation, parole, or release except by act of the governor. . . .

The dissent contended that section 565.040.2 refers only to cases "where a death penalty sentence cannot constitutionally be imposed upon a particular defendant," *id.* at 273, and in *Whitfield,* the death penalty could indeed be constitutionally imposed simply by requiring a jury to make the requisite factual determinations on penalty phase retrial, *id.* at 273–74. Although this argument did not carry the day, and though the Court is now bound

---

**3.** The Court thanks counsel for their excellent presentations of the arguments on both sides of the issues in this appeal.

by the precedent established by the majority, the different facts in the case at hand compel a different result.

Defendant Baker, unlike defendant Whitfield, was never sentenced to death so as to trigger section 565.040.2. On its face, section 565.040.2 does not apply! Yet, by now applying, or rather misapplying, the *Whitfield* remedy of life without parole to Baker, the majority disregards the *Whitfield* rationale, which was based exclusively on section 565.040.2.

Unfortunately, it appears that this problem was overlooked because of the majority's undue focus on the timeline for the motion for new trial. By its express terms, *Whitfield* applies to all pending cases. *Id.* at 268–69. This is so, according to the majority, regardless of the status of the motion for new trial, and it is so even if, as here, the *Whitfield* issue was not raised in a timely fashion to permit the court to rule on it. Indeed, the application of *Whitfield,* as the majority holds, encompasses a remedy for the *Whitfield* violation, and the remedy, too, is necessarily independent of the motion for new trial. Although *Whitfield* holds that the only permissible remedy is to sentence the defendant to life without parole, that holding, as I have attempted to show, is wholly dependent on section 565.040.2, which does not apply to persons who have not yet been sentenced. In short, the exclusive *Whitfield* remedy of life without parole cannot logically be extended to this case.

For these reasons, I would hold that the trial court had jurisdiction to take up the *Whitfield* violations and order the remedy of a new penalty phase hearing, regardless of the status of the motion for new trial. I would quash the writ.