**STATE of Missouri, Respondent,**

v.

**Robert W. FOLSON, Appellant.**

**No. WD 65351.**

Missouri Court of Appeals,
Western District.

Aug. 8, 2006.

Irene C. Karns, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, P.J., ROBERT G. ULRICH, and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, Judge.

Robert Folson appeals his conviction following a jury trial for second-degree assault, section 565.060.2, RSMo 2000, and sentence as a prior and persistent offender to eight years imprisonment. He raises two points on appeal. He claims that the trial court abused its discretion in allowing the State to amend the information the day before trial changing the description of the weapon from "deadly weapon" to "dangerous instrument." He also claims that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support the conviction. The judgment of conviction is affirmed.

## Facts

Viewed in the light most favorable to the jury's verdict, the facts are as follows. At approximately 10:00 p.m. on July 1, 2004, in Orrick, Missouri, Larry Weis started an evening walk. As he walked his ordinary route west on Front Street, he saw two women exit an apartment complex. One of the women, later identified as Stephanie Rooks,[1] began walking at a rapid pace west on Front Street in front of Mr. Weis. The second woman, later identified as Lela Vance, stood at the doorway of the apartment complex. Mr. Weis continued walking, and as he walked past Ms. Vance, he said, "Good evening," and she responded, "Hello," or "Good evening." Moments later, he heard a man, later identified as Robert Folson, the appellant, yell, "Bitch," from behind him. Mr. Weis did not respond because he did not believe the comment was directed at him, and he continued walking. As Mr. Weis approached the end of the block, he heard Mr. Folson yell again, "Hey, you bald-headed bitch. I'm talking to you." At that point, Mr. Weis turned around and saw the appellant in a second-floor window of the apartment complex yelling at him. He asked, "Are you talking to me?" Mr. Folson said that he was, and Mr. Weis asked, "What's your

---

1. She later married the appellant and became Stephanie Folson.

problem?" Mr. Folson said, "I don't have a problem. What is your problem?" Mr. Weis told Mr. Folson that he didn't have a problem and that "you're the one giving me a hard time." Mr. Folson then said, "I'm going to come downstairs and kick your ass." Mr. Weis responded, "I'll be standing right here. I'm not going anywhere."

Mr. Folson then disappeared from the window. Ms. Rooks, who was walking quickly in front of Mr. Weis, circled back past Mr. Weis toward the apartment complex. Mr. Folson came out the apartment complex and walked directly toward Mr. Weis. He was wearing a "do rag," sleeveless shirt, pants, and a necklace. When he got within ten feet of Mr. Weis, he began to circle to Mr. Weis's left. Mr. Folson then quickly moved toward Mr. Weis and threw a punch, which Mr. Weis blocked. Mr. Weis struck Mr. Folson in the head knocking his do rag off. The two men separated momentarily, and Mr. Folson hit Mr. Weis in the side. Mr. Weis threw another punch. Again, the men separated, and Mr. Folson said, "I'm not going to stay out here on the front, in front so the cops can see me. Let's finish this out back in the alley, in the dark." Mr. Weis responded, "I'm not going in the alley in the dark." Mr. Folson then said, "I stabbed you." Mr. Weis looked down and saw a six to seven inch bloody spot on his shirt. The wound began to throb, and Mr. Weis turned, picked up Mr. Folson's do rag and necklace that had fallen to the ground during the fight, and started walking toward the nearby police station. Mr. Weis never saw the device used by Mr. Folson to stab him.

Not finding any officers at the police station, Mr. Weis returned to his apartment complex, and neighbors took him to a hospital emergency room. Some police officers were present at the emergency room for another situation and overheard Mr. Weis tell a nurse that he had been stabbed. They asked him what happened, and he reported the incident. Mr. Weis was treated for a moon-shaped laceration in his lumbar area measuring two and a half centimeters long and one centimeter deep. He received seven stitches, a tetanus shot, and some antibiotics. After leaving the hospital, Mr. Weis went to the police station and gave officers the do rag and necklace he had picked up at the scene of the incident.

Mr. Folson was initially charged with second-degree assault for "knowingly caus[ing] physical injury to Larry Weis by means of a deadly weapon by stabbing him with a sharp object." An amended information charged Mr. Folson as a prior and persistent offender with the same offense. A second amended information was filed the day before trial amending the second-degree assault charge from "by means of a deadly weapon" to "by means of a dangerous instrument." Mr. Folson objected to the court's permitting the amendment, arguing that the change from "deadly weapon" to "dangerous instrument" violated his right to due process by making the State's case easier to prove. The court asked Mr. Folson whether he needed additional time to prepare for the case because of the change, but Mr. Folson responded that he did not need a continuance. Following trial, the jury returned a guilty verdict. The court entered its judgment of conviction and sentenced Mr. Folson to eight years imprisonment. This appeal followed.

## Amendment of Information

■ In his first point on appeal, Mr. Folson contends that the trial court abused its discretion in allowing the State to amend the information the day before trial changing the description of the device used

to stab the victim from "deadly weapon" to "dangerous instrument." The amended information had charged that "on or about July 1, 2004, in the County of Ray, State of Missouri, the defendant, knowingly caused physical injury to Larry Weis, by means of a *deadly weapon* by stabbing him with a sharp object." The second amended information filed the day before trial charged that "on or about July 1, 2004, in the County of Ray, State of Missouri, the defendant, knowingly caused physical injury to Larry Weis, by means of a *dangerous instrument* by stabbing him with a sharp object." Mr. Folson argues that the amendment effectively lessened the State's burden of proof and prejudiced him by nullifying his planned defense, which was to focus on the lack of proof concerning use of a deadly weapon.

■ Rule 23.08 governs amendment of an indictment or information. It provides:

Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:

(a) No additional or different offense is charged, and

(b) A defendant's substantial rights are not thereby prejudiced.

No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

Rule 23.08. An amendment is not permissible if it charges a different offense. *State v. Boone Ret. Ctr., Inc.*, 26 S.W.3d 265, 269 (Mo.App. W.D.2000). Amendment is also prohibited if the defense would be prejudiced. *Id.* The standard of review on appeal is for abuse of discretion. *Id.*

■ Mr. Folson does not argue that the amendment charged a different offense. It did not. Where a statute creates an offense that can be committed by alternate methods, an amendment merely changing the method by which the offense was committed does not charge a different offense. *State v. Mace*, 665 S.W.2d 655, 660 (Mo. App. W.D.1984). Mr. Folson was charged with second degree assault under section 565.060.1(2), which provides that a person commits the crime if he "[a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument." The offense of second-degree assault may be committed by means of either a deadly weapon or a dangerous instrument. The amendment in this case changing "deadly weapon" to "dangerous instrument," merely changed the description of the instrument by which the assault was committed and did not charge a different offense. *See State v. Maynard*, 707 S.W.2d 810, 812–13 (Mo.App. W.D.1986)(where amendment of information charging armed criminal action changed "deadly weapon" to "dangerous instrument," amendment did not charge a different offense).

■ Mr. Folson contends, however, that the amendment of the information prejudiced his defense because it nullified his planned defense, which was to focus on the lack of proof concerning a deadly weapon. The test for prejudice is whether the planned defense to the original charge would still be available after the amendment and whether the defendant's evidence would be equally applicable after the amendment. *Boone Ret. Ctr.*, 26 S.W.3d at 269; *Mace*, 665 S.W.2d at 660(quoting *State v. Taylor*, 375 S.W.2d 58, 63 (Mo. 1964)). Under this test, no prejudice has been shown. Mr. Folson's defense at trial was that the State could not prove the existence of *any* weapon, regardless of

whether it was characterized as a "deadly weapon" or a "dangerous instrument." His attorney repeatedly questioned the State's witnesses on cross-examination about whether they had seen or recovered any item that caused Mr. Weis's injury or whether they had seen Mr. Folson reach into his pockets or attempt to conceal or throw anything away. He presented his own witnesses who testified that they never saw Mr. Folson with any type of object that could have been used to injure Mr. Weis. Additionally, Mr. Folson's witnesses testified that Mr. Folson was wearing knit shorts without pockets and no shirt, implying that he had no place to conceal anything. This defense would have been equally available to him under the original information and after the amendment. Furthermore, the evidence of the lack of a weapon would have been equally available after the amendment, and Mr. Folson fails to indicate any evidence that could no longer be presented after the amendment. Finally, when Mr. Folson objected to the amended information, the trial court asked him if he desired additional time to prepare for the case because of the change. Mr. Folson expressly declined stating that he was not requesting a continuance. The trial court did not abuse its discretion in allowing the State to amend the information. The point is denied.

### Sufficiency of the Evidence

In his second point on appeal, Mr. Folson claims that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support his conviction. Specifically, he argues that the State failed to present sufficient evidence that he used a dangerous instrument.

Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Pike*, 162 S.W.3d 464, 475–76 (Mo. banc 2005). The evidence and all reasonable inferences drawn from the evidence are viewed in the light most favorable to the jury's verdict, and any contrary evidence and inferences are disregarded. *Id.* at 476. Great deference is given to the trier of fact. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998).

A person commits the crime of second-degree assault if he knowingly causes physical injury to another person by means of a dangerous instrument. § 565.060.1(2), RSMo 2000. "Physical injury" is defined as "physical pain, illness, or any impairment of physical condition." § 556.061(20), RSMo Cum.Supp.2003. A "dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." § 556.061(9), RSMo Cum.Supp.2003. "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 556.061(28), RSMo Cum.Supp.2003.

Although Mr. Folson acknowledges that he caused physical injury to Mr. Weis, he contends that insufficient evidence was presented that he used a "dangerous instrument." Undisputedly, whatever Mr. Folson used to injure Mr. Weis was unknown and unidentified. Neither Mr. Weis nor any other witness saw Mr. Folson with a weapon or other object. Lack of identification of the object does not defeat the State's case that Mr. Folson used a "dangerous instrument" to harm

Mr. Weis, however. *See e.g. State v. Daniels,* 18 S.W.3d 66, 68–69 (Mo.App. W.D. 2000); *State v. Kee,* 956 S.W.2d 298, 302(Mo.App. W.D.1997)(cases where no weapon or instrument was observed or found but use of "dangerous instrument" nevertheless proven by other evidence such as nature of the injury). The evidence in this case showed that Mr. Folson struck Mr. Weis in his side with an object. Mr. Weis suffered a moon-shaped laceration in his lumbar area, which measured two and a half centimeters long and one centimeter deep. The emergency room physician described the wound as "gaping" and "open" and speculated that a potato peeler or small trowel may have caused the wound, although he admitted that he was only guessing what the device might have been. The wound, which left a blood-stain on Mr. Weis's shirt that was six to seven inches in diameter, required seven stitches to close. Additionally, during the fight, Mr. Folson told Mr. Weis, "I stabbed you." Despite the fact that no weapon or object was seen or found, Mr. Folson struck Mr. Weis once with the object and it caused a wound that resulted in bleeding that was not insignificant and required seven stitches to close. The evidence was sufficient to support a reasonable inference that Mr. Folson used a dangerous instrument to stab the victim, which was capable of causing death or other serious physical injury. *See Daniels,* 18 S.W.3d at 69 (where victim suffered injury on wrist that was three to four inches long and one inch deep and was taken to emergency room and received ten stitches, and bystanders saw blood gushing from wound, size of wound lead to legitimate inference that victim was cut by a "dangerous instrument"); *Kee,* 956 S.W.2d at 302 (where victim admitted to trauma center with at least ten stab wounds and emergency room physician testified that wounds were short lacerations consistent with a short, sharp, stabbing instrument, a legitimate inference may be made that victim was stabbed with "dangerous instrument"). Sufficient evidence was presented to support Mr. Folson's conviction of second-degree assault. The point is denied.

The judgment of conviction is affirmed.

ELLIS, P.J., and HOLLIGER, J., concur.