**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jefferson L. SMITH, Defendant–Appellant.**

No. 27285.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 21, 2007.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 4, 2007.

Application for Transfer Denied Jan. 22, 2008.

William J. Swift, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard Anthony Starnes, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Jefferson Smith (Defendant) appeals his convictions for second-degree assault and armed criminal action. *See* §§ 565.060, 571.015.[1] This Court affirms.

## I. Factual and Procedural Background

An appellate court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict and disregards all contrary evidence and inferences. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Defendant are summarized below.

Renee — (Renee) was widowed in December 1998. She met Defendant in 1999 and dated him for about two years. They lived about three miles away from each other. In 2001, Renee ended the relationship. Defendant would not accept Renee's decision and repeatedly harassed her by threatening her life, using his vehicle to chase her down the road, leaving obscene messages on her answering machine and throwing a cinder block through her bedroom window. Renee obtained several restraining orders against Defendant because of his behavior.

Around midnight on April 29, 2002, Renee and her new boyfriend, Eddie Foster (Foster), returned to Renee's home in Dora, Missouri. Her home was located on a two-acre plot beside Highway 181. A driveway ran from the highway to the house. There was a garage on the premises, and some woods abutted the back side of the property behind the house. Renee's two vehicles, a Ranger truck and a Corsica automobile, were parked beside the house.

Renee and Foster had been home for 5–10 minutes when they heard loud music outside Renee's bedroom window. She looked out and saw Defendant. He was driving a black Chevrolet truck on the grass of Renee's yard right beside the window. Defendant drove back out to the highway and appeared to leave. Within a couple of minutes, Defendant returned. He pulled into the driveway, drove up next to the house and started sounding his truck horn continuously.

Renee and Foster went outside to tell Defendant to leave. Because of Renee's prior encounters with Defendant, she armed herself with a 9mm pistol. Foster also took a shotgun with him for protection because he knew that Defendant carried a gun and that he was upset with Foster for dating Renee. She screamed at Defendant to leave. When he gunned the truck's motor, Foster fired a shot into the air. Defendant drove toward Foster and started chasing him all around the yard, making figure-eight patterns and circles in the grass as Foster attempted to avoid being hit by the truck. Foster was scared as he ran to the back of the house toward the woods. He worried that he would be killed if he fell down. When he reached the trees, he dove into the edge of the woods for safety and then fired a shot at the truck in an attempt to disable it. The tire tracks from Defendant's truck led from the driveway all the way to the tree line at the back of Renee's property.

After Foster fired, Defendant struck a tree in the back yard. He drove back

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2007).

toward the front of the house and stopped near Renee's vehicles. As Defendant backed the truck up, it struck the rear end of the Corsica. Renee fired six or seven shots at the truck as Defendant was driving away. Renee called the Ozark County Sheriff's Department to report what had happened.

At approximately 1:30 a.m., Deputy Jason Tuck arrived at the scene to investigate. He observed tire tracks that circled in a figure-eight pattern and cut ruts into Renee's yard. The tracks indicated that someone was chased into the woods. The rear end of the Corsica was damaged. After the deputy processed the scene, he located an abandoned black truck about one-quarter of a mile away. There were bullet holes in the passenger side of the truck, and the back window had been shot out. Mail found in the truck had Defendant's name on it.

Defendant was charged by information with committing three felonies. Count I charged Defendant with the class C felony of tampering in the first degree for defacing an automobile. *See* § 569.080.1(2). Count II charged Defendant with armed criminal action (ACA) for using his truck as a dangerous instrument while committing the predicate felony of tampering in the first degree. § 571.015. Count III charged Defendant with the class C felony of assault in the second degree by trying to run over Foster with Defendant's truck. § 565.060.

The case was tried to a jury in May 2005. At the close of all the evidence, the trial court granted the State leave to amend the ACA charge to allege assault in the second degree as the predicate felony. Defendant was acquitted of tampering, but he was found guilty of committing second-degree assault and ACA. The trial court sentenced Defendant to serve consecutive, five-year terms of imprisonment.

## II. Discussion and Decision

On appeal, Defendant presents four points for review. He challenges: (1) the sufficiency of the evidence to support his conviction for second-degree assault; (2) the trial court's jurisdiction to convict Defendant of second-degree assault; (3) the sufficiency of the predicate felony to support Defendant's ACA conviction; and (4) the trial court's decision to grant the State leave to amend the information. Finding no merit in any of these contentions, we affirm. Additional facts necessary to the disposition of the case are included below as we address Defendant's four points on appeal.

### Point I—Sufficiency of the Evidence on the Second–Degree Assault Conviction

■ Defendant's first point challenges the sufficiency of the evidence to support his conviction for assault in the second degree. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court gives great deference to the trier of fact. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *See State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005).

■ Insofar as relevant here, "[a] person commits the crime of assault in the second degree if he: ... (2) Attempts to cause ... physical injury to another person by means of a deadly weapon or dangerous instrument...." § 565.060.1(2). Thus, proof that the attempt to cause physical injury was made using one of the prohibited means—a deadly weapon or dangerous instrument—is an essential element of the crime. A pickup truck quali-

fies as a dangerous instrument when it is used under circumstances in which the vehicle is readily capable of causing death or serious physical injury. § 556.061(9); *State v. Williams*, 126 S.W.3d 377, 385 (Mo. banc 2004); *State v. Fraga*, 189 S.W.3d 585, 589 (Mo.App.2006); *State v. Cole*, 148 S.W.3d 896, 901 n. 9 (Mo.App. 2004). Defendant does not argue otherwise. From the evidence presented, the jury could have reasonably inferred that Defendant did use a dangerous instrument to attempt to cause physical injury to Foster. Again, Defendant does not argue otherwise. He readily concedes that the evidence was sufficient to prove that he tried to run over Foster with his truck. Nevertheless, he persists in contending that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to convict him of assault in the second degree "based on how it was instructed to the jury." Defendant argues that the inclusion of the language "by running over him" meant that the State had to prove Defendant actually ran over Foster in order to obtain a conviction. We disagree.

MAI–CR 3d 319.12 is the pattern jury instruction for submitting assault in the second degree. The format for submitting an attempt is specified in subsection [2], which states that the defendant "attempted to cause physical injury to [*name of victim*] by means of a (deadly weapon) (dangerous instrument) by [*Insert means by which attempt was made such as shooting, stabbing, etc.*] him . . . ." In the case at bar, the offense of second-degree assault was submitted to the jury via Instruction No. 8. In relevant part, this instruction hypothesized that "defendant attempted to cause serious physical injury to Eddie Foster by running over him with an automobile . . . ." The language upon which Defendant relies—"by running over him with an

automobile"—simply served the purpose of identifying *what* dangerous instrument Defendant used in attempting to cause physical injury to Foster and *how* the attempt was carried out with that instrument. Therefore, we conclude that there was sufficient evidence from which a reasonable juror could have found Defendant guilty of assault in the second degree beyond a reasonable doubt. *See Belton*, 153 S.W.3d at 309. Point I is denied.

### Point II—Jurisdiction and Sufficiency of the Information to Charge Assault in the Second Degree

In Defendant's second point, he contends the trial court never acquired jurisdiction to convict and sentence Defendant for second-degree assault because of a defect in the second amended information. Section 565.060.1 provides, in pertinent part, that a person commits the crime of assault in the second degree if he:

(1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause; or

(2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument. . . .

The second amended information alleged that "defendant attempted to cause *serious* physical injury to Eddie Foster by means of a dangerous instrument, by trying to run over him with an automobile." (Italics added.) It is evident that Defendant was being charged with a violation of § 565.060.1(2), which does not require proof of serious physical injury for a conviction. Nevertheless, Defendant argues that the addition of the word "serious" to the information rendered it insufficient

and thereby deprived the trial court of subject matter jurisdiction.

■ The latter prong of Defendant's argument may be quickly dispatched. As our Supreme Court explained in *State v. Parkhurst*, 845 S.W.2d 31 (Mo. banc 1992), "[s]ubject matter jurisdiction of the circuit court and the sufficiency of the information or indictment are two distinct concepts. The blending of those concepts serves only to confuse the issue to be determined. Circuit courts obviously have subject matter jurisdiction to try crimes...." *Id.* at 34–35; *State v. Kenney*, 973 S.W.2d 536, 543 (Mo.App.1998) *overruled on other grounds by State v. Withrow*, 8 S.W.3d 75, 80 (Mo. banc 1999); *State v. Sparks*, 916 S.W.2d 234, 236 (Mo.App.1995). Here, the second amended information charged Defendant with committing the class C felony of assault in the second degree in violation of § 565.060. The trial court had subject matter jurisdiction to try this crime. *Parkhurst*, 845 S.W.2d at 35; Mo. CONST. art. V, § 14(a).

■ Defendant's argument attacking the sufficiency of the information fares no better. Defendant did not file a motion challenging the information before trial. *See* Rule 24.04(b)(2). Therefore, he waived his right to object to the information, "except for objections that the indictment or information fails to show jurisdiction or to charge an offense." *State v. Simpson*, 846 S.W.2d 724, 728 (Mo. banc 1993). An information challenged for the first time after verdict will be deemed insufficient "only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *Parkhurst*, 845 S.W.2d at 35. In either event, a defendant will not be entitled to relief based on such a post-verdict challenge unless he demonstrates actual prejudice. *Id.* "A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense." *State v. Williams*, 126 S.W.3d 377, 381 (Mo. banc 2004).

■ Neither ground is satisfied here. First, the second amended information charging Defendant with assault in the second degree provided:

> The Prosecuting Attorney of the County of Ozark, State of Missouri, charges that the defendant, in violation of Section 565.060, RSMo, committed the class C felony of assault in the second degree, punishable upon conviction under Sections 558.011 and 560.011, RSMo, in that on or about April 29, 2002, in the County of Ozark, State of Missouri, the defendant attempted to cause serious physical injury to Eddie Foster by means of a dangerous instrument, by trying to run over him with an automobile.

Defendant was given adequate notice of the crime with which he was charged because the information alleged all the essential elements of assault in the second degree as defined by § 565.060.1(2). Adding the word "serious" to the charge "amounted to the assumption of an unnecessary burden by the State and constituted mere surplusage that did not prejudice Defendant." *State v. Carney*, 195 S.W.3d 567, 571–72 (Mo.App.2006); *see State v. Patino*, 12 S.W.3d 733, 738 (Mo.App.1999) (defining surplusage as "the inclusion of words or phrases that are unnecessary to charge the statutory elements of the offense"). Second, Defendant was able to prepare a defense to this charge by presenting evidence that he did not intend to injure

Foster at all and only drove toward him in an effort to get Foster to stop shooting at Defendant. Furthermore, he was permitted, over the State's objection, to submit a self-defense instruction placing that issue squarely before the jury. Defendant's Point II is denied.

### Point III—ACA

Defendant's third point asks that his ACA conviction be reversed in the event this Court granted either Points I or II. In light of our denial of Defendant's first two points, Point III is moot and need not be addressed.

### Point IV—Amending Count II of the Information

■ In his fourth and final point, Defendant contends the trial court abused its discretion in granting the State leave at the close of all the evidence to amend Count II to substitute second-degree assault for first-degree tampering as the predicate felony for the ACA charge.[2] The following additional facts are relevant to this point.

At the close of the State's evidence, Defendant moved for a judgment of acquittal as to Count II on the ground that the State could not rely upon tampering as the

predicate felony for ACA. Based upon the evidence presented, Defendant argued the truck had not been used as a dangerous instrument since there was no one in the Corsica who could have been killed or seriously injured when the two vehicles collided.[3] To prove the second-degree assault charge, however, the State had already presented evidence that Defendant attempted to cause physical injury to Foster by running him down with the truck and that Foster could have been killed if he had not escaped into the woods. Therefore, the prosecutor moved to amend Count II of the information by interlineation to conform to the evidence by allowing the second-degree assault charge to be substituted as the predicate felony for the ACA charge. Defendant opposed the amendment. He argued that, as amended, the ACA constituted a different charge and prejudiced him because he could not adequately prepare his defense. The trial court took the matter under advisement. At the close of all the evidence, the trial court granted the State leave to amend Count II as requested. Instruction No. 7 submitted the ACA offense to the jury and hypothesized second-degree assault as the predicate felony.

2. Defendant was convicted of ACA by the jury on May 18, 2005. He was granted an extension of time to file a motion for new trial and did so on June 13, 2005. More than 90 days passed without any ruling on the motion by the court. On September 20, 2005, the court held a hearing at which sentence was imposed. A formal judgment was entered that same day. On September 29, 2005, the court entered another order in the case reciting that "on this day, the Court having heard evidence in support of Defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial, grants Motion for New Trial on Count II only." This order was a nullity and is void. The trial court did not purport to grant a new trial on Count II until *after* Defendant had been sentenced and judgment

had been entered. At that point, the trial court lacked jurisdiction to grant a new trial on Count II either pursuant to Defendant's motion or on the court's own initiative. *See* Rule 29.11(g); Rule 29.13(b); *State ex rel. Baker v. Kendrick*, 136 S.W.3d 491, 494 (Mo. banc 2004); *State ex rel. Wagner v. Ruddy*, 582 S.W.2d 692, 695 (Mo. banc 1979); *State ex rel. Parks v. Barker*, 567 S.W.2d 130, 132 (Mo. banc 1978).

3. A dangerous instrument is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" § 556.061(9); *State v. Fraga*, 189 S.W.3d 585, 589 (Mo.App.2006).

The amendment of an information is governed by Rule 23.08, which states:

> Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:
>
> (a) No additional or different offense is charged, and
>
> (b) A defendant's substantial rights are not thereby prejudiced.
>
> No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

Thus, "[a]n amendment is not permissible if it charges a different offense." *State v. Folson*, 197 S.W.3d 658, 661 (Mo.App. 2006). Amendment of the information also is prohibited if it would prejudice the defense. *Id.* "The standard of review on appeal is for abuse of discretion." *Id.* Defendant contends that the amendment of Count II by interlineations was an abuse of discretion because he was charged with a different offense and his defense was prejudiced. We disagree.

First, the amendment did not charge a different offense. To determine whether an amended information charges a new or different offense, courts inquire whether the elements of the two offenses are different. *State v. McKeehan*, 894 S.W.2d 216, 222 (Mo.App.1995). The crime of ACA is defined as the commission of "any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon. . . ." § 571.015.1. Thus, there are only two elements to this crime: "1) commission of a felony 2) by, with, or through the use, assistance or aid of a dangerous in-

strument or deadly weapon." *Kennell v. State*, 209 S.W.3d 504, 507 (Mo.App.2006). Because virtually any felony can serve as the predicate offense, there are innumerable alternative methods by which ACA can be committed.[4] "Where a statute creates an offense that can be committed by alternate methods, an amendment merely changing the method by which the offense was committed does not charge a different offense." *Folson*, 197 S.W.3d at 661.

That is what occurred here. From the outset, the information charged Defendant with first-degree tampering and second-degree assault, which are both felonies. Tampering was the original predicate felony for the ACA charge. At trial, the State was granted leave to amend the information to change the method by which ACA was alleged to have been committed by relying upon the second-degree assault charge as the predicate felony. Both before and after the amendment, Defendant was still charged with the same crime: ACA. Since the elements of that crime remained the same, no new or different offense was charged in violation of Rule 23.08.

This Court addressed that very issue in *State v. Sappington*, 873 S.W.2d 618 (Mo. App.1994). The defendant was originally charged with the felonies of first-degree assault in violation of § 565.050 and unlawful use of a weapon in violation of § 571.030 in Count I; Count II charged Defendant with ACA, predicated on the first-degree assault charge. *Id.* at 625–26. One day before trial, the State was permitted to amend the information to drop the assault charge from Count I and predicate the ACA charge in Count II on unlawful use of a weapon. *Id.* at 626. On appeal, the defendant contended the amendment to Count II charged a different offense in

---

4. By statute, the crime of ACA cannot be predicated upon "the felonies defined in sections 564.590, 564.610, 564.620, 564.630, and 564.640, RSMo." § 571.015.4.

violation of Rule 23.08. This Court rejected the defendant's contention, holding that "[t]he state is entitled to correct allegations in informations charging armed criminal action." *Id.* We reach the same conclusion here. As in *Sappington,* the amended information here simply changed the predicate for ACA from the existing felony charge of tampering to the existing felony charge of second-degree assault.

Second, the amendment did not prejudice the defense. "The test for prejudice is whether the planned defense to the original charge would still be available after the amendment and whether the defendant's evidence would be equally applicable after the amendment." *Folson,* 197 S.W.3d at 661; *Sappington,* 873 S.W.2d at 626. Defendant claims he was prejudiced by the amendment because he was unprepared to meet the charge that he actually faced. We find that argument unpersuasive. In order to find Defendant guilty of ACA, the jury first had to find him guilty of second-degree assault. That charge had been asserted against Defendant from the outset. Defendant was prepared to meet the assault charge with evidence that he did not intend to injure Foster at all and only drove toward him in an effort to get Foster to stop shooting at Defendant. This defense was supported by the submission of an instruction on self-defense. Therefore, Defendant was not prejudiced by the amendment. *See, e.g., Folson,* 197 S.W.3d at 661–62 (defendant's position at trial was that the State could not prove the existence of *any* weapon, regardless of whether it was characterized as a deadly weapon or a dangerous instrument, which was a defense that was equally available to him before and after the amendment to the information); *State v. Price,* 940 S.W.2d 534, 537 (Mo.App.1997) (defendant failed to demonstrate how he was prejudiced by the amended information because his defense that he did not commit the acts constituting the offense was equally applicable before and after the amendment). The trial court did not abuse its discretion when it permitted the State to amend Count II of the information. Point IV is denied.

The judgment of the trial court is affirmed.

BARNEY and LYNCH, JJ., Concur.