STATE of Missouri, Respondent,

v.

Roderick NUNLEY, Appellant.

No. SC 76981.

Supreme Court of Missouri,
En Banc.

May 31, 2011.

Rehearing Denied July 19, 2011.

Michael J. Gorla, St. Louis, Jennifer Herndon, Florissant, Susan Hunt, Law Offices of Susan M. Hunt, Kansas City, for Nunley.

Michael J. Spillane, Attorney General's Office, Jefferson City, for State.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

Nunley pled guilty to first degree murder, armed criminal action, forcible rape, and kidnapping. He waived jury sentencing. He did so for strategic reasons because he was afraid that if he went before a jury, it might sentence him to death. The defendant's original guilty plea and jury sentencing waiver remained valid after his case was remanded for re-sentencing. Because of Nunley's guilty plea and waiver, *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *State v. Whitfield*, 107 S.W.3d 253, 265

(Mo. banc 2003), do not apply. In addition, this Court did not err in the proportionality review of the defendant's death sentence because the applicable law regarding proportionality review in *State v. Deck*, 303 S.W.3d 527 (Mo. banc 2010) (J. Stith concurring), and *State v. Dorsey*, 318 S.W.3d 648, 659 (Mo. banc 2010), is not retroactive. *State v. Clay*, No. SC78373, order dated December 9, 2010.

The motion to recall the mandate is overruled.

## II. Facts and Procedure

Roderick Nunley committed first degree murder and received a death sentence. At his original plea hearing on January 28, 1991, Nunley gave his version of the murder:

Q: Starting with that night, March 21, 1989, who were you with?

A: Michael Taylor.

Q: Ok. Were you two smoking—well, let me ask this. Were you smoking or doing any drugs that night?

A: Yes, we were.

. . .

Q: Ok. At some point that night did you two steal a car?

A: Yes

Q: Ok. Who was driving that car?

A: Me.

. . .

Q: At some point that morning, March 22, 1989, did you two see a girl with a purse?

A: Yes.

Q: And did Michael Taylor tell you that he wanted to snatch that girl's purse?

A: Yes, he did.

Q: Did Michael Taylor then get out of the car and talk with the girl?

A: Yes.

. . .

Q: Did Michael Taylor, after speaking with her, grab her?

A: Yes.

Q: And did he put her in the car?

A: Yes, he did.

. . .

Q: Did you two force her to stay in the car?

A: Yes.

Q: You then drove to somewhere in Grandview, Missouri?

A: Yes.

. . .

Q: You went actually specifically to your mother's house; is that correct?

A: Yes.

. . .

Q: Once you got to that house, you then put the car in the garage; is that right?

A: Yes.

Q: And at some point did you give Michael Taylor something to blindfold [the girl]?

A: I think I did, yes.

Q: OK. And then at some point he took her out of the car and forced her to crawl down to the basement; is that correct?

A: Yes.

Q: Once the three of you were in the basement, you told her to sit down, didn't you?

A: Yes.

Q: And while you were in the basement, you saw Michael Taylor taking her clothes off, didn't you?

A: Yes.

Q: You then went upstairs?

A: Yes.

. . .

Q: When you came back downstairs, did you see Michael Taylor forcing her to have intercourse with him?

A: Yes.

. . .

Q: At some point did Michael Taylor then ask you to go get him some lubricant?

A: Yes.

Q: And, in fact, did you do that?

A: Yes.

. . .

Q: Ok. You never stopped him from committing the rape, did you?

A: No.

Q: After that was over, you two then put her in the trunk of the car you had stolen; is that correct?

A: Yes.

Q: You then tied her up, didn't you?

A: Yes.

Q: And you and Michael Taylor stood there for a while; is that correct?

A: Yes.

Q: And the two of you had a conversation, didn't you?

A: Yes.

Q: Michael Taylor said that he did not want her identifying him in court later on, didn't he?

A: Yes.

. . .

Q: So at that point you two discussed what to do, didn't you?

A: Yes.

Q: And you two decided to kill her, didn't you?

A: Yes.

Q: You didn't have a gun; is that correct?

A: Yes.

Q: So Michael Taylor suggested using knives.

A: Yes.

Q: And you went upstairs and got two knives from the kitchen.

A: Yes.

Q; And then you took those two knives back down to the garage where Michael Taylor was; is that correct?

A: Yes, I did.

Q: You gave Michael Taylor the little knife, and you took the big knife.

A: Yes.

Q: And Michael Taylor then stabbed her, didn't he?

A: Yes, he did.

Q: And initially he stabbed her in the heart and the chest area a number of times; isn't that correct?

A: Yes.

Q: And Michael Taylor actually told you that he thought you two were in this shit together; do you remember that?

A: Yes.

Q: So you took your knife, and you also attempted to stab her, didn't you?

A: Yes

Q: Your knife was dull?

A: Yes.

Q: Was Michael Taylor then the one that ended up stabbing her in the throat where you had tried to?

A: Yes.

Q: While you were stabbing her and while Michael Taylor was stabbing her, you never left to go call the police or to get help, did you?

A: No, I didn't.

. . .

Q: You then took both of the knives back upstairs; is that correct?

A: Yes.

Q: And Michael Taylor closed the trunk of the car.

A: Yes, he did.

Q: And you knew that she was going to die, didn't you?

A: Yes.

Q: You drove the car away; is that correct?

A: Yes.

Q: And you parked it in some neighborhood fairly close to the house.

A: Yes.

. . .

Q: And on July 8, 1989, you gave a video taped statement regarding you participation in this offense, didn't you?

A: Yes.

. . .

Q: And it's your desire, in fact, to plead guilty here today?

A: Yes.

At the plea hearing, Nunley also testified that he knew he was waiving a jury trial and jury sentencing:

Q: Do you understand that by pleading guilty today you're waiving or giving up a certain number of constitutional rights that you would have if you went to trial?

A: Yes.

Q: Do you understand that at that trial you would have the right to a trial by a judge or a jury?

A: Yes.

. . .

Q: Do you understand that if you went to trial and you were found guilty of these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?

A: Yes.

Q: By waiving that, you're not going to be sentenced by a jury. Do you understand that?

A: Yes.

. . .

Q: It is still your desire to plead guilty today?

A: Yes, it is.

After a three day sentencing hearing, the judge sentenced Nunley to death.

Nunley filed a Rule 24.035 motion for post-conviction relief that was overruled. Nunley then appealed. This Court vacated the death sentence and remanded the case for a "new penalty hearing, imposition of sentence, and entry of new judgment."

The original judge recused, and Judge O'Malley was assigned to Nunley's case. Nunley filed a motion to withdraw his guilty plea under Rule 29.07, and the motion was overruled. Nunley then filed a motion for reconsideration or, in the alternative, jury sentencing. Nunley received a hearing on his motion to withdraw his plea on January 26, 1994. At the hearing, Nunley answered the following questions from the State:

Q: Last time, you put all of your eggs in one basket with the judge, the judge sentenced you to death, and now this time you want to try a different approach, correct?

A: Yes.

. . .

Q: Did you think about your case before you entered your plea?

A: Yes.

Q: Okay, in fact you had a number of discussions with your attorneys before you entered your plea, didn't you?

A: Yes

. . .

Q: In fact, you told [your attorneys] right off the bat, you said, "Hey, I'm guilty," didn't you?

A: Yes, sir.

. . .

Q: And they in essence told you the evidence against you was overwhelming, didn't they?

A: Yes.

. . .

Q: And that was something you took into consideration when you entered your plea of guilty, wasn't it?

A: Yes.

Q: And you knew you had the right to a jury trial?

A: Yes, sir.

. . .

Q: And you were explained how the State would present aggravating circumstances and your attorneys would be presenting mitigating circumstances, correct?

A: Yes, sir.

Q: And when you talked about this with your attorneys before you entered your plea, it was brought out the fact that a jury who saw this evidence would be outraged, wasn't it?

A: Yes, my attorney did mention that.

Q: And, in fact, you yourself were afraid that if you went before a jury, they very well may sentence you to death, weren't you?

A: Well, I really made the decision on the advice of my attorneys.

Q: Well let me ask you this, sir, based upon the discussions you had with your attorneys, your review of all the evidence, and the fact that you were guilty, you understood there was a strong likelihood that if you went before a jury, they were going to sentence you to death, weren't you, sir?

A: Yes, sir.

Q: And so then you started discussing your other options. You said, well, one option would be to go before a judge, right?

A: Yes.

Q: But in order to go before a judge, you would have to waive all of your constitutional rights and you would have to plead guilty and that judge would sentence you, correct?

A: Yes.

. . .

Q: So as I understand it at the time you entered your guilty plea, you did that because you, in fact, were guilty; you knew the evidence against you was overwhelming. You were afraid to go in front of a jury because they might sentence you to death, and you thought [the original trial judge] was a good judge to be in front of, is that a fair statement?

A: Yes.

. . .

Q: You gambled on the judge route, you lost, and now you want to try the jury route, isn't that a fair summary?

A: Yes, sir.

Judge O'Malley overruled Nunley's motion for reconsideration. A sentencing hearing was conducted in April 1994. At the hearing, the State presented a witness from the victim's family, testimony from officers who investigated the murder, testimony from a forensic chemist who worked on the case, testimony from the officers who apprehended Nunley, evidence of the autopsy results, and a witness who testified that Nunley confessed the murder to him. To support the existence of mitigation factors, the defense presented a psychologist who testified that Nunley suffered from a dependent personality disorder, witnesses who testified regarding Nunley's use of cocaine and how that affects his judgment, testimony of Nunley's regret, testimony from Nunley's girlfriend and family members regarding Nunley's troubled childhood and drug use, testimony of discrimination in past homicide cases, and an expert who testified about

racial discrimination within the legal justice system. Judge O'Malley considered Nunley's guilty plea from January 28, 1991, and the evidence presented at the April 1994 sentencing hearing and sentenced the defendant to death for the murder count.[1]

On appeal, Nunley argued he had a right to withdraw his guilty plea because he had pled guilty expecting to be sentenced by a particular judge and that it was unjust for him to be ultimately sentenced by a different judge. This Court rejected the argument and upheld the guilty plea. *State v. Nunley*, 923 S.W.2d 911, 919–922 (Mo. banc 1996).

On August 19, 2010, this Court issued an order setting Nunley's execution date for October 20, 2010. On September 30, 2010, the defendant filed a motion to recall the mandate with this Court. This Court overruled the motion on the merits on October 12, 2010. ("Appellant's motion to recall the mandate having been considered on the merits, said motion overruled"). Nunley then filed a supplemental petition for writ of habeas corpus and an application for stay of execution in the United States District Court for the Western District of Missouri. On October 18, 2010, the Western District issued an order staying the defendant's execution pending an explanation from this Court that clarifies why the motion to recall the mandate was denied. Order, *Nunley v. Bowersox*, 8001–CV–W–FJG, 2010 WL 4272474 (W.D.Mo. entered Oct. 18, 2010). Specifically, the Western District asked,

If the right to have a jury determine his punishment did not exist when petition-

er was originally sentenced to death, but this right was subsequently established by *Ring* and found to be retroactive by the Missouri Supreme Court in *Whitfield*, is petitioner's waiver still valid? *Id.* The 8th Circuit upheld the stay, in a *per curiam* opinion, as did the United States Supreme Court. *Nunley v. Bowersox*, No. 10–3292 (8th Cir. Oct. 19, 2010); *Bowersox v. Nunley*, —— U.S. ——, 131 S.Ct. 444, 178 L.Ed.2d 345 (2010) (order noted that Justice Scalia would lift the stay). On October 20, 2010, this Court issued an order directing the parties to brief the issues raised in the motion to recall the mandate and the motion for modification.

### III. Standard

"[A]lthough an appellate court divests itself of jurisdiction of a cause when the court transmits its mandate, jurisdiction may be reacquired by means of the judicial power to recall a mandate for certain purposes." *Whitfield*, 107 S.W.3d at 265. A mandate may be recalled in order to remedy the deprivation of a criminal defendant's federal constitutional rights. *Id.*

### IV. Points Raised By Nunley

**A. Because Nunley pled guilty and waived jury sentencing, his Sixth and Fourteenth Amendment rights and Missouri constitutional rights were not violated under *Ring* and *Whitfield*.**

In his first point relied on, Nunley argues:

---

1. Pursuant to section 565.032, Judge O'Malley found the following statutory aggravators: (1) the offense was committed for the purpose of receiving money from the victim; (2) the murder was outrageously or wantonly vile, horrible and inhuman, and involved depravity of mind; (3) The murder was done for the purpose of avoiding the lawful arrest and

confinement of the defendant; (4) The murder was done while the defendant was engaged in the perpetration of the kidnapping; (5) the murder was done while the defendant aided another person in raping the victim; (6) the murder of the victim was done to prevent her from testifying against the defendant.

This Court should recall its mandate and set aside Nunley's sentence of death in light of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003), because, pursuant to said intervening authorities, Nunley has a constitutional right to have a jury determine the necessary facts to impose a sentence of death, and Nunley was deprived of this right in violation of the Sixth and Fourteenth Amendments, and Art. I, §§ 2, 10, 18(a) & 21 of the Missouri Constitution, in that a judge, rather than a jury, made the requisite factual determinations and sentenced him to death.

In *Ring*, a jury found the defendant guilty of first degree murder. In the sentencing phase, the trial judge alone determined that aggravating factors existed that allowed for the imposition of the death penalty. 536 U.S. at 588, 122 S.Ct. 2428. The Supreme Court, relying on its prior decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), reasoned that "[c]apital defendants, no less than non-capital defendants, ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, 536 U.S. at 589, 122 S.Ct. 2428. The Supreme Court held that a defendant has the right to have a jury find the statutory aggravating circumstances necessary for the imposition of the death penalty. *Id.* at 609, 122 S.Ct. 2428. This Court subsequently held that the principles articulated in *Ring* apply retroactively to defendants *who did not waive jury trials* and whose cases became final prior to the Supreme Court's ruling. *Whitfield*, 107 S.W.3d at 268–69.

Since *Whitfield*, *Ring* has been retroactively applied in nine cases. *State ex rel. Lyons v. Lombardi*, 303 S.W.3d 523, 525 n. 2 (Mo. banc 2010); *Ervin v. Purkett*, 2007 WL 2782332 (E.D.Mo.2007) at *1; *State v. Thompson*, 134 S.W.3d 32, 33 (Mo. banc 2004); *State ex rel. Baker v. Kendrick*, 136 S.W.3d 491, 494 (Mo. banc 2004); *State ex rel. Mayes v. Wiggins*, 150 S.W.3d 290, 291 (Mo. banc 2004); *State v. Buchanan*, 115 S.W.3d 841, 842 (Mo. banc 2003); *State v. Smith*, No. SC77337, order entered October 28, 2003; *State v. Richardson*, No. SC76059, order entered October 29, 2003; *State v. Morrow*, No. SC79112, order entered October 29, 2003. None of these cases, however, involved a situation where a defendant *strategically pled guilty and waived jury sentencing* because he was afraid a jury would sentence him to death, as Nunley did in this case. *See State ex rel. Taylor v. Steele*, 341 S.W.3d 634, 649–52 (Mo. banc 2011) ("*Whitfield*'s retroactivity holding is limited to the identified similar collateral review cases where the jury was convened but was unable to reach a verdict and then the sentence was imposed by the judge." *Id.* at 651).

Nunley waived jury sentencing when he pled guilty at his original plea hearing in 1991. *Nunley*, 923 S.W.2d at 923. At his plea hearing, the trial judge explained to Nunley that by pleading guilty he was waiving several constitutional rights, including jury sentencing. Nunley testified that he understood his waiver:

Q: Do you understand that by pleading guilty today *you're waiving or giving up a certain number of constitutional rights* that you would have if you went to trial?

A: Yes.

Q: Do you understand that at that trial you would have the right to a trial by a judge or a jury?

A: Yes.

. . .

Q: Do you understand that if you went to trial and you were found guilty of

these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?

A: Yes.

Q: By waiving that, *you're not going to be sentenced by a jury.* Do you understand that?

A: Yes.

. . .

Q: It is still your desire to plead guilty today?

A: Yes, it is.

(Emphasis added). Nunley waived jury sentencing because he wanted a judge to sentence him. As he testified in his hearing to withdraw his guilty plea, he thought a jury would likely sentence him to death:

Q: And you knew you had the right to a jury trial?

A: Yes, sir.

. . .

Q: And you were explained how the State would present aggravating circumstances and your attorneys would be presenting mitigating circumstances, correct?

A: Yes, sir.

Q: And when you talked about this with your attorneys before you entered your plea, it was brought out the fact that a jury who saw this evidence would be outraged, wasn't it?

A: Yes, my attorney did mention that.

Q: And, in fact, you yourself were afraid that if you went before a jury, they very well may sentence you to death, weren't you?

A: Well, I really made the decision on the advice of my attorneys.

Q: Well let me ask you this, sir, based upon the discussions you had with your attorneys, your review of all the evidence, and the fact that you were guilty, you understood there was a strong likelihood that if you went before a jury, they were going to sentence you to death, weren't you, sir?

A: Yes, sir.

Q: And so then you started discussing your other options. You said, well, one option would be to go before a judge, right?

A: Yes.

Q: But in order to go before a judge, *you would have to waive all of your constitutional rights* and you would have to plead guilty and that judge would sentence you, correct?

A: Yes.

(Emphasis added).

■ In Missouri, the general rule is that "a guilty plea waives all nonjurisdictional defects, including statutory and constitutional guarantees." *Feldhaus v. State,* 311 S.W.3d 802, 804 (Mo. banc 2010); *Ross v. State,* 335 S.W.3d 479, 481 (Mo. banc 2011) ("a guilty plea 'voluntarily and understandably made waives all non-jurisdictional defects and defenses'"). Specifically, *Ring* does not apply to defendants who plead guilty and waive their right to jury sentencing, as Nunley did here. *Colwell v. State,* 118 Nev. 807, 59 P.3d 463, 473 (2002) ("*Ring* is not applicable to [a defendant's] case [when], unlike *Ring,* [the defendant pleads] guilty and waive[s] his right to a jury trial."); *Moore v. State,* 771 N.E.2d 46, 49 (Ind.2002) (By pleading guilty, defendant forfeited his right to "have a jury recommend to the trial court whether or not a death penalty should be imposed ...."); *South Carolina v. Downs,* 361 S.C. 141, 604 S.E.2d 377, 380 (2004) ("*Ring* did not involve jury-trial waivers and is not implicated when a defendant pleads guilty."); *State v. Piper,* 709 N.W.2d 783, 806–807 (S.D.2006) (The "*Ring* analysis is inapplicable when a defendant waives the

right to jury sentencing."); *Sanchez v. Superior Court*, 102 Cal.App.4th 1266, 126 Cal.Rptr.2d 200 (2002) (after *Ring*, a defendant may validly waive his or her right to have the jury determine the degree of murder).

Nunley's reasons for waiving jury sentencing were clearly strategic. They also were absolute. He did not want a jury to sentence him because of the "strong likelihood that ... they were going to sentence [him] to death." This case is factually inapposite to *Ring* and *Whitfield*. *See State ex rel. Taylor*, at 648–49 ("Because the record clearly shows that Taylor strategically waived jury sentencing after weighing the costs and benefits of facing a jury, his case is distinguishable from *Apprendi, Ring, Blakely, Whitfield*, and their progeny.").

Nunley raises two further arguments. First, Nunley asserts that his initial waiver of jury sentencing did not remain valid after his case was remanded for re-sentencing. Second, he argues that section 565.006.2 is unconstitutional because he alleges it requires a defendant who pleads guilty to waive jury sentencing.

### a. Nunley's original guilty plea/jury waiver remained valid after his case was remanded for re-sentencing.

█ Nunley argues that he should have had a "fresh slate" after his case was remanded for re-sentencing, thus making his original guilty plea and jury waiver ineffective. Nunley's accomplice, Michael Taylor, made a similar argument that was rejected by this Court and the Eighth Circuit Court of Appeals. Like Nunley, Taylor pled guilty in front of one judge, but after reversal on appeal the original judge recused, and a different judge again sentenced him to death upon remand. This Court held that the original guilty plea and jury waiver remained valid upon

remand. *State v. Taylor*, 929 S.W.2d 209, 215–216 (Mo. banc 1996). The Eighth Circuit Court of Appeals also upheld Taylor's guilty plea and held that the defendant had no substantial and legitimate expectation of being sentenced by the judge to whom he pled guilty under Missouri law and no independent federal right to be sentenced by the same judge who took the plea. *Taylor v. Bowersox*, 329 F.3d 963, 968–969 (8th Cir.2003).

In addition, this Court has already ruled that Nunley's original guilty plea and waiver remained effective after remand. In *Nunley*, the defendant argued that "it is unfair and unjust for him to be sentenced by any judge other than the original trial judge to whom he entered his guilty plea" because "he purposefully chose to plead guilty and be sentenced by the original judge ..." 923 S.W.2d at 919–20. This Court stated that

a defendant should not be permitted under all circumstances to withdraw a guilty plea when the original judge is unavailable for sentencing. The dispositive factor should be whether the sentencing judge is familiar with the prior proceedings to permit an informed sentencing decision.

*Id.* at 921. This Court held that the record reflected that Judge O'Malley was familiar with the prior proceedings, so "not permitting defendant to withdraw his plea does not result in manifest injustice or a miscarriage of justice." *Id.* at 922. In addition, this Court noted that the order to remand the case "did not reverse the plea. This is demonstrated by this Court specifically remanding for a new penalty hearing and imposition of sentence but not a new plea hearing." *Id.* at 919. The original plea and jury waiver remained valid after the remand.

Other jurisdictions support that a waiver of a right through a guilty plea remains

valid after the case is remanded. *State v. Michael A.*, 297 Conn. 808, 1 A.3d 46 (2010) (defendant's guilty plea and waiver of a jury trial remained valid after his case was remanded for re-sentencing); *People v. Sofia*, 62 A.D.3d 1159, 881 N.Y.S.2d 185 (N.Y.App.Div. 3d Dept.2009) (defendant's original waiver of appeal precluded him from challenging the sentence imposed at re-sentencing).

### b. Section 565.006.2 is constitutional.

■ Under section 565.006.2, "[n]o defendant who pleads guilty to a homicide offense ... shall be permitted a trial by jury on the issue of the punishment to be imposed, except by agreement of the state." Nunley argues that section 565.006.2 is unconstitutional under *Ring* because it precludes his right to have a jury determine the requisite facts to impose the death penalty. Nunley argues that if section 565.006.2 is unconstitutional, then his original guilty plea and waiver was invalid. In support, the defendant cites *Whitfield*, 107 S.W.3d 253.

*Whitfield* does not apply to this case. In *Whitfield*, this Court invalidated a portion of section 565.030.4 that allowed a judge to make the necessary findings required for the death penalty whenever a jury deadlocked on punishment. *Id.* at 261–62. Unlike the defendant in *Whitfield*, Nunley pled guilty and waived his right to jury sentencing. *See State ex rel. Taylor*, at 649–50 (distinguishing the defendant in *Whitfield* from a defendant who strategically pled guilty to avoid jury sentencing).

In addition, other courts hold that "guilty pleas and waivers are valid even if the underlying sentencing scheme explicitly and unequivocally precludes the defendant from receiving a jury sentence." *State v. Piper*, 709 N.W.2d at 807 (S.D. 2006); *Colwell*, 59 P.3d at 473 (the Nevada Supreme Court upheld a statutory scheme that unequivocally eliminated the right to a jury at sentencing because the defendant pled guilty and validly waived his right to a jury trial); *Moore*, 771 N.E.2d at 49 (the Indiana Supreme Court upheld state statutes that unequivocally foreclosed the right to jury sentencing after a guilty plea because the guilty plea waived any entitlement to argue the statutory scheme violated the federal and state constitutions by depriving the defendant of a jury determination of the aggravating circumstances). Section 565.006.2 is constitutional.

■ Even if section 565.006.2 were unconstitutional as applied to others, it is constitutional as applied to Nunley. If a statute can be applied constitutionally to an individual, that person "will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *State v. Self*, 155 S.W.3d 756, 760 (Mo. banc 2005).

■ At his initial plea hearing, Nunley testified that he understood his right to be tried by a jury and his right to jury sentencing. Nunley could have gone to trial and been sentenced by a jury if he wanted, but he pled guilty in order to avoid jury sentencing. He chose to be sentenced by a judge because he felt that a jury would likely sentence him to death. Nunley cannot claim that the State deprived him of a jury when he strategically pled guilty in order to avoid jury sentencing. Section 565.006.2 is constitutional as applied to Nunley. Because Nunley's guilty plea and waiver remained valid, neither *Ring* nor *Whitfield* applies here.

### c. Nunley provides no support for his claim in Point I that his rights under the Missouri Constitution were violated.

■ Other than citing to Mo. Const. art. I secs. 2, 10, 18(a), and 21 in his point

relied on heading, Nunley never mentions these sections of the Missouri Constitution or explains how his rights under these sections were violated. Rule 84.04(d) requires that "each point shall ... explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Arguments raised in the points relied on portion of an appellate brief that are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review. *Coleman v. Gilyard,* 969 S.W.2d 271, 273 (Mo.App.1998). Because Nunley provides no support in his argument, claims in Point I relating to a violation of the Missouri Constitution fail.

### d. Point I Conclusion

*Ring* and *Whitfield* do not apply to Nunley because he pled guilty and knowingly waived a jury trial and jury sentencing, choosing instead, for strategic reasons, to be sentenced by a judge. Nunley's challenges to the validity of his waiver fail for two reasons. First, his original waiver remained valid after his case was remanded for sentencing. Second, section 565.006.2 is constitutional at least as to Nunley because he knew he could be sentenced by a jury, but he strategically pled guilty in order to avoid jury sentencing.

Because *Ring* and *Whitfield* do not apply, Nunley's Sixth and Fourteenth Amendment rights were not violated. In addition, Nunley provides no support for his claim that his Missouri constitutional rights were violated; any claim in Point I regarding these rights fails.

### B. Nunley's due process rights guaranteed by the Fourteenth Amendment and the Missouri Constitution were not violated in proportionality review because *Deck* is not applied retroactively.

In his second point relied on, Nunley argues:

This Court should recall its mandate in light of its intervening decision in *State v. Deck,* 303 S.W.3d 527 (Mo. banc 2010), and thereafter set aside Nunley's sentence of death because § 565.035.3 requires this Court to conduct proportionality review by comparing a defendant's sentence of death to similar cases, including those that resulted in a sentence of life imprisonment without probation or parole, and Nunley was deprived of due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Art. I, §§ 2, 10, 18(a) & 21 of the Missouri Constitution in that his sentence of death was reviewed by only comparing it to similar cases where the defendant was sentenced to death, and a comparison of Nunley's case with all similar cases, including those resulting in a life sentence, demonstrate that Nunley's sentence is excessive and disproportionate.

Section 565.035.3 states that this Court must review "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant." In *Deck,* 303 S.W.3d at 555 (J. Stith concurring), and *State v. Anderson,* 306 S.W.3d 529, 544–45 (Mo. banc 2010) (J. Breckenridge concurring), a majority of this Court held that the proportionality review mandated by section 565.035.3 requires consideration of all factually similar cases in which the death penalty was submitted to the jury, including those resulting in a sentence of life imprisonment without the possibility of probation or parole. In *State v. Dorsey,* 318 S.W.3d 648, 659 (Mo. banc 2010), this Court clarified that "the concurring opinions in *Deck* and *Anderson* state the applicable law with regard to proportionality review." Nunley now claims that his due

process rights under the United States and Missouri Constitutions were violated because his death sentence was reviewed only by comparing it to similar death sentence cases, not life sentence cases.

The United States Supreme Court has held that a state supreme court is not constitutionally compelled to make retroactive its new construction of a state statute. *Wainwright v. Stone*, 414 U.S. 21, 23–24, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). "A state in defining the limits or adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward." *Id.*

In *State v. Clay*, 975 S.W.2d 121, 146 (Mo. banc 1998), this Court conducted proportionality review by comparing Clay's case only to other similar cases in which the death penalty was imposed. Clay filed a motion to recall the mandate or, in the alternative, a petition for writ of habeas corpus. This Court overruled Clay's motion and explained that Clay "received proportionality review in the manner provided by law at the time of that review" and that proportionality review as provided in the recent *Dorsey* decision "is not to be applied retrospectively." *State v. Clay*, No. SC78373 (order entered December 9, 2010); *Clay v. Bowersox*, 628 F.3d 996 (8th Cir.2011).

The law regarding proportionality review in the concurring opinions in *Deck* and *Anderson*, which this Court in *Dorsey* stated was the applicable law in Missouri,

is not to be applied retroactively. This Court did not violate Nunley's federal or Missouri constitutional rights by limiting its proportionality review to similar death sentence cases.

## V. Points that Nunley does not raise and have been waived.

█ Section IV of the analysis examines issues Nunley properly argued in his points relied on and the argument section of his brief. The dissent, and the United States Western District Court in *Nunley v. Bowersox*, No. 99–8001–CV–W–FJG, 2010 WL 4272474 (W.D.Mo. order entered October 18, 2010), address two issues Nunley did not raise. First, the dissent asserts that the majority is in error because the sentencing court violated *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Nunley never once mentions *Blakely* in his points relied on or in the argument section of his primary or reply brief. Second, responding to Nunley's application to stay his execution, the United States Western District Court asked this Court to answer the following question: [2]

If the right to have a jury determine his punishment did not exist when petitioner was originally sentenced to death, but this right was subsequently established by *Ring* and found to be retroactive by the Missouri Supreme Court in *Whitfield*, is petitioner's waiver still valid? *Nunley v. Bowersox*, No. 99–8001–CV–W–FJG, 2010 WL 4272474 (W.D.Mo. order

**2.** Because Nunley does not make this argument in his briefs, this Court assumes that Nunley's argument would be similar to Michael Taylor's argument. Taylor, Nunley's accomplice, addressed this issue in his habeas corpus petition proceeding, *State ex rel. Taylor*, that was argued before this Court on the same day as the present case. Taylor argued that a waiver is the "intentional relinquishment or abandonment of a known right." *State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc

1998) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Taylor claimed that there was no "known right" in 1991, as a matter of Sixth Amendment law, to jury fact-finding at a capital sentencing. Citing *Halbert v. Michigan*, 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005) in support, Taylor claimed that he could not waive a right that did not exist at time of his supposed waiver.

entered October 18, 2010). Again, Nunley never makes an argument regarding any issue that resembles this question. The dissent also addresses the district court's question and asserts that Nunley waived his statutory right to jury sentencing but not his Sixth Amendment right to jury sentencing.

 Nunley waived these issues because he did not raise them; these issues are not subject to review by this Court. Rule 84.04(d) requires the appellant's points relied on to "state concisely the legal reasons for the appellant's claim of reversible error." The purpose of the rule "is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997); *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). "A point relied on which does not state 'wherein and why' the trial court erred does not comply with Rule 84.04(d) and preserves nothing for appellate review." *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005). In addition, any claim that is not supported in the argument section is deemed abandoned. *Coleman*, 969 S.W.2d at 273. This Court stands by precedent and holds that the issues not raised by Nunley are waived. They are discussed only in gratis to the dissent and the district court.

### A. This case is distinguishable from *Blakely*.

*Blakely* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348 which held that, "[o]ther than the fact of a prior conviction, any *fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added). In *Blakely*, the United States Supreme Court extended *Ring* by declaring that the Sixth Amendment right to jury sentencing applies even where a defendant pleads guilty. 542 U.S. at 305–06, 124 S.Ct. 2531.

The defendant in *Blakely* pled guilty to kidnaping. *Id.* at 298, 124 S.Ct. 2531. The facts admitted in his plea hearing, standing alone, supported a maximum sentence of 53 months under Washington state law. *Id.* To the defendant's surprise, the judge imposed a 90-month sentence after finding that the defendant acted with "deliberate cruelty." *Id.* at 299–300, 124 S.Ct. 2531. The Court held that the sentence violated the defendant's Sixth Amendment rights because the judge's finding of deliberate cruelty was neither admitted by the defendant nor found by the jury. *Id.* at 303–05, 124 S.Ct. 2531. The Court explained, "The statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the **facts** reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303, 124 S.Ct. 2531 (emphasis added). The Court continued, "nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either **stipulates to the relevant facts** or consents to judicial factfinding." *Id.* at 310, 124 S.Ct. 2531 (emphasis added).

 *Blakely* is distinguishable from the present case. The defendant in *Blakely* was surprised when his sentence was judicially enhanced, whereas Nunley strategically pled guilty in order to avoid jury sentencing. Nunley knew that the sole issue for trial was whether he would be sentenced to death or life in prison. He had already admitted to all of the facts of the crime and the statutory aggravators required by section 565.030.4(1). He wanted a judge, not a jury, to make all further

determinations in reaching his sentence. This necessarily included the "judgment" fact [3] required by 565.030.4(2), whether the aggravating circumstances warrant impos- ing the death sentence and the "judgment" fact required by 565.030(3), whether the evidence in mitigation is sufficient to outweigh the evidence in aggravation. Ulti-

**3.** *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992) (*Whitfield I*) considered the language of section 565.030.4(1)–(4) in terms of an Eighth Amendment challenge. In this context it was said that the second step of the death penalty requirement, that "... the jury must unanimously find that all aggravating circumstances, taken together, sufficiently warrant imposing the death penalty," was a "finding of fact by the jury, not a discretionary decision." This is an unusual kind of fact that involves the exercise of judgment. In the normal sense of the word a fact is "[a] thing done; an action performed or an accident transpiring; an event or circumstance; an actual occurrence. An actual happening in time or space or an event mental or physical." Blacks Law Dictionary, Revised Fourth Edition, 1968. Normally, a fact would not involve a process of exercise of judgment. *Whitfield* goes on to state that, "The jury does not make any discretionary decision in imposing the death penalty. On the other hand, the jury is given the constitutionally-required unlimited discretion to exercise mercy and reduce the sentence to life." 837 S.W.2d at 515.

This Court went on in *State v. Whitfield*, 107 S.W.3d 253 (*Whitfield II*) to consider section 565.030.4 in a Sixth Amendment context under *Apprendi* and *Ring*. Upon remand, the jury had hung during the penalty phase and the judge entered a death sentence. Only within this context, this Court held that a judge could not make the determinations required by the first three steps under the statute, absent an indication that the jury hung at step four.

Because Nunley so clearly waived his rights to a jury determination of these "judgment" facts, we do not consider, whether *Whitfield I* or *II* should be reexamined within the Sixth Amendment context. A number of other cases have determined that these are not fact determinations under *Ring* or *Apprendi*. *United States v. Sampson*, 486 F.3d 13, 32 (1st Cir.2007) ("As other courts have recognized, the requisite weighing constitutes a process, not a fact to be found."); *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir.2005) (characterizing the weighing process as "the lens through which the jury must focus the facts that it has found" to reach its individualized determination); *Ford v. Strickland*, 696 F.2d 804, 818 (11th Cir.1983) ("While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, ... the relative *weight* is not."); *Gray v. Lucas*, 685 F.2d 139, 140 (5th Cir.1982) (per curiam) (the "reasonable doubt standard simply has no application to the weighing of aggravating and mitigating circumstances."); *Higgs v. United States*, 711 F.Supp.2d 479, 540 (D.Md.2010) ("Whether the aggravating factors presented by the prosecution outweigh the mitigating factors presented by the defense is a *normative* question rather than a *factual* one."); *State v. Fry*, 138 N.M. 700, 126 P.3d 516 (2005) ("[T]he weighing of aggravating and mitigating circumstances is thus not a 'fact that increases the penalty for a crime beyond the prescribed statutory maximum.'"); *Commonwealth v. Roney*, 581 Pa. 587, 866 A.2d 351, 360 (2005) ("[B]ecause the weighing of the evidence is a function distinct from fact-finding, *Apprendi* does not apply here."); *Ritchie v. State*, 809 N.E.2d 258 (Ind. 2004) ("In *Bivins v. State*, 642 N.E.2d 928, 946 (Ind.1994), we concluded, as a matter of state law, that '[t]he determination of the weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt but is a balancing process.' *Apprendi* and its progeny do not change this conclusion."); *Brice v. State*, 815 A.2d 314 (Del.2003) (*Ring* does not apply to the weighing phase because weighing "does not increase the maximum punishment."); *Nebraska v. Gales*, 265 Neb. 598, 658 N.W.2d 604, 629–30 (2003) ("[W]e do not read either *Apprendi* or *Ring* to require that the determination of mitigating circumstances, the balancing function, or proportionality review be undertaken by a jury"); *Oken v. State*, 378 Md. 179, 835 A.2d 1105, 1158 (2002) ("the weighing process never was intended to be a component of a 'fact finding' process"); *Ex parte Waldrop*, 859 So.2d 1181, 1190 (Ala.2002) ("*Ring* and *Apprendi* do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.").

mately, he wanted a judge to determine whether mercy should be exercised and the sentence reduced to life imprisonment pursuant to 565.030.4(4). Nunley was not surprised by the process, the statutory steps of the process, or the decision maker. He got what he asked for in these regards. He was only surprised by the result, when the trial judge decided to impose the death sentence. *Blakely* does not extend Sixth Amendment protections to defendants who strategically plead guilty and purposefully waive jury sentencing. *See State ex rel. Taylor*, at 649.

**B. Nunley waived his statutory and constitutional right to jury sentencing when he pled guilty, and this waiver remained valid even though it came before *Ring*.**

 Although not raised by Nunley, and thus waived, the district court asked this Court to address the following question:

If the right to have a jury determine his punishment did not exist when petitioner was originally sentenced to death, but this right was subsequently established by *Ring* and found to be retroactive by the Missouri Supreme Court in *Whitfield*, is petitioner's waiver still valid?

*Nunley v. Bowersox*, No. 99–8001–CV–W–FJG, 2010 WL 4272474 (W.D.Mo. order entered October 18, 2010). The dissent also raises this question. These questions misconstrue the record of this case. The waiver remained valid. *See State ex rel. Taylor*, at 645–52 (Taylor, Nunley's accomplice, pleaded guilty prior to *Ring* and *Whitfield*, and this Court held that the defendant's waiver remained valid.).

When Nunley originally pled guilty in 1991, he knew he could be sentenced by a jury if he desired. Missouri statutes recognized the right to be sentenced by a jury if the defendant went to trial. *See* section 557.036.2, RSMo 1991; section 565.006.1. In addition, at his plea hearing, the trial judge explained to Nunley that he could be sentenced by a jury if he had a jury trial. The judge explained these rights in constitutional, not statutory, terms:

Q: Do you understand that by pleading guilty today you're waiving or giving up a certain number of *constitutional* rights that you would have if you went to trial?

A: Yes.

Q: Do you understand that at that trial you would have the right to a trial by a judge or a jury?

A: Yes.

. . .

Q: Do you understand that if you went to trial and you were found guilty of these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?

A: Yes.

Q: By waiving that, you're not going to be sentenced by a jury. Do you understand that?

A: Yes.

. . .

Q: It is still your desire to plead guilty today?

A: Yes, it is.

(Emphasis added).

At his subsequent motion to withdraw his plea, Nunley confirmed this understanding, but he strategically chose to plead guilty in order to avoid jury sentencing:

Q: Did you think about your case before you entered your plea?

A: Yes.

Q: Okay, in fact you had a number of discussions with your attorneys before you entered your plea, didn't you?

A: Yes

. . .

Q: And they in essence told you the evidence against you was overwhelming, didn't they?

A: Yes.

. . .

Q: And that was something you took into consideration when you entered your plea of guilty, wasn't it?

A: Yes.

Q: And you knew you had the right to a jury trial?

A: Yes, sir.

. . .

Q: And you were explained how the State would present aggravating circumstances and your attorneys would be presenting mitigating circumstances, correct?

A: Yes, sir.

Q: And when you talked about this with your attorneys before you entered your plea, it was brought out the fact that a jury who saw this evidence would be outraged, wasn't it?

A: Yes, my attorney did mention that.

Q: And, in fact, you yourself were afraid that if you went before a jury, they very well may sentence you to death, weren't you?

A: Well, I really made the decision on the advice of my attorneys.

Q: Well let me ask you this, sir, based upon the discussions you had with your attorneys, your review of all the evidence, and the fact that you were guilty, you understood there was a strong likelihood that if you went before a jury, they were going to sentence you to death, weren't you, sir?

A: Yes, sir.

Q: And so then you started discussing your other options. You said, well, one option would be to go before a judge, right?

A: Yes.

Q: But in order to go before a judge, you would have to waive all of your constitutional rights and you would have to plead guilty and that judge would sentence you, correct?

A: Yes.

. . .

Q: So as I understand it at the time you entered your guilty plea, you did that because you, in fact, were guilty; you knew the evidence against you was overwhelming. You were afraid to go in front of a jury because they might sentence you to death, and you thought [the original trial judge] was a good judge to be in front of, is that a fair statement?

A: Yes.

The record supports that Nunley knew he had a right to be sentenced by a jury, but he preferred to be sentenced by a judge. The record also makes clear that this right was described to him in constitutional terms. Nunley's waiver of jury sentencing was not an adverse consequence of pleading guilty, it was what Nunley wanted. As Judge Dierker noted in his post-conviction relief memorandum, "At no time did [Nunley] wish to go before a jury for any purpose, much less for sentencing."

The key fact is Nunley's knowledge of the ability to be sentenced by a jury. Neither *Apprendi*, *Ring*, nor *Blakely* created a right to be sentenced by a jury that Nunley did not already have or understand, it just provided the United States Constitution as an additional source of this right. The fact that *Ring* provided an additional source of this right after Nunley pled guilty does not make Nunley's waiver "unknowing." Moreover, as noted above, Nunley testified that he was giving up "constitutional rights" by pleading guilty.

The dissent argues that Nunley waived his statutory right to jury sentencing, but asserts that Nunley could not waive his Sixth Amendment right to a jury determination of the facts necessary to impose the death penalty before the Supreme Court recognized that right. In support of its argument, the dissent borrows arguments raised by Nunley's accomplice, Michael Taylor, in a separate writ of habeas corpus proceeding heard by this Court.

Following Taylor's argument (not Nunley's), the dissent cites *Halbert v. Michigan,* 545 U.S. 605, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005). In *Halbert,* a Michigan statute provided that a defendant who pled guilty or *nolo contendere* could appeal only by leave of the court, and indigent defendants would only be provided assistance of counsel in certain situations. *Id.* at 610, 125 S.Ct. 2582. Halbert pled *nolo contendere.* *Id.* at 614, 125 S.Ct. 2582. The Court described circumstances in which counsel may be appointed, but "did not expressly state that, absent such circumstances, counsel would not be provided." *Id.* at 643 fn. 1, 125 S.Ct. 2582. The trial court set the defendant's sentences to run consecutively. *Id.* at 615, 125 S.Ct. 2582. The defendant requested appellate counsel, but the trial court, and subsequently the court of appeals and the Michigan Supreme Court, denied his request. *Id.* at 615–16, 125 S.Ct. 2582.

The United States Supreme Court found that Michigan's practice violated the Due Process and Equal Protection Clauses. *Id.* at 610, 125 S.Ct. 2582. Michigan argued that the defendant waived the right to appointed appellate counsel by entering a plea of *nolo contendere.* *Id.* at 623, 125 S.Ct. 2582. The Court disagreed, "At the time he entered his plea, [the defendant], in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel he could elect to forgo." *Id.* It then noted that "the trial court did not tell [the defendant], simply and directly, that in his case, there would be no access to appointed counsel." *Id.* at 624, 125 S.Ct. 2582 (citing *Iowa v. Tovar,* 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004)).

The present case is distinguishable from *Halbert.* Unlike the trial court in *Halbert,* which "did not expressly state that, absent such circumstances, counsel would not be provided," the trial court in this case *did* explicitly tell Nunley, "simply and directly," that he would not be sentenced by a jury if he pled guilty, and the trial court explained these rights to Nunley in ***constitutional*** terms:

Q: Do you understand that by pleading guilty today you're waiving or giving up a certain number of ***constitutional*** rights that you would have if you went to trial?

A: Yes.

Q: Do you understand that at that trial you would have the right to a trial by a judge or a jury?

A: Yes.

. . .

Q: Do you understand that if you went to trial and you were found guilty of these charges that you would then start the second phase of the trial, which would be the sentencing phase by the jury; do you understand that?

A: Yes.

Q: By waiving that, you're not going to be sentenced by a jury. Do you understand that?

A: Yes.

. . .

Q: It is still your desire to plead guilty today?

A: Yes, it is.

(Emphasis added). He understood that he could be sentenced by a jury if he wanted, but he strategically chose to be sentenced by a judge because he feared that a jury would sentence him to death.

In addition, *Halbert* is distinguishable from this case in that Nunley received what he wanted—judge sentencing—while the defendant in *Halbert* waived a right to his detriment. Nunley pled guilty and waived jury sentencing because the evidence against him was "overwhelming" and he feared that a jury would be "outraged" and would sentence him to death.

> Q: Well let me ask you this, sir, based upon the discussions you had with your attorneys, your review of all the evidence, and the fact that you were guilty, you understood there was a strong likelihood that if you went before a jury, they were going to sentence you to death, weren't you, sir?
>
> A: Yes, sir.
>
> Q: And so then you started discussing your other options. You said, well, one option would be to go before a judge, right?
>
> A: Yes.
>
> Q: But in order to go before a judge, you would have to waive all of your **constitutional** rights and you would have to plead guilty and that judge would sentence you, correct?
>
> A: Yes.
>
> . . .
>
> Q: So as I understand it at the time you entered your guilty plea, you did that because you, in fact, were guilty; you knew the evidence against you was overwhelming. You were afraid to go in front of a jury because they might sentence you to death, and you thought [the original trial judge] was a good judge to be in front of, is that a fair statement?
>
> A: Yes.

(Emphasis added). The trial court gave Nunley what he desired—judge sentencing. Nunley never wanted jury sentencing until after the trial judge sentenced him to death. As Nunley explained in his January 26, 1994 hearing on his motion to withdraw his guilty plea:

> Q: Last time, you put all of your eggs in one basket with the judge, the judge sentenced you to death, and now this time you want to try a different approach, correct?
>
> A: Yes
>
> . . .
>
> Q: You gambled on the judge route, you lost, and now you want to try the jury route, isn't that a fair summary?
>
> A: Yes, sir.

Nunley cannot strategically plead guilty and waive jury sentencing in order to be sentenced by a judge knowing he had the right to jury sentencing and then claim that his constitutional rights were violated when he received his request. Nunley's Sixth Amendment rights were not violated.

## VI. Conclusion

For the forgoing reasons, Nunley's motion to recall the mandate is overruled.

RUSSELL, BRECKENRIDGE and FISCHER, JJ., concur.

STITH, J., concurs in part and dissents in part in separate opinion filed.

TEITELMAN and WOLFF, JJ., concur in opinion of STITH, J.

LAURA DENVIR STITH, Judge, concurring in part and dissenting in part.

I agree with the principal opinion so far as it holds that the clarification of applicable law regarding proportionality review set out in *State v. Deck*, 303 S.W.3d 527, 555 (Mo. banc 2010) (Stith, J., concurring), and *State v. Dorsey*, 318 S.W.3d 648, 659

(Mo. banc 2010), does not apply retroactively.

Further, Roderick Nunley has conceded on appeal, that at the time of his guilty plea, he was aware that he had no right to jury trial on punishment under section 565.006.2. It then was settled law that a defendant had no separate Sixth Amendment right to a jury trial of punishment. *Walton v. Arizona,* 497 U.S. 639, 649, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Unlike his co-defendant, Michael Taylor, Mr. Nunley further has conceded that the purpose for which he pleaded guilty was to avoid a jury determination of punishment and that he raises no issue about the validity of his original guilty plea and waiver. Rather, his complaint is limited to claimed error in not allowing him to choose to be sentenced by a jury on remand once this Court overturned his initial death sentence.

For these reasons, I further agree with the principal opinion that, at the time of his guilty plea, Mr. Nunley validly waived his *statutory* right to jury sentencing and that this *statutory* waiver was not rendered invalid, nor was he entitled to withdraw his *guilty plea* simply due to the Supreme Court's later recognition in the *Apprendi–Ring–Blakely* trilogy that *Walton* was incorrect in failing to recognize an independent Sixth Amendment right of those who plead guilty to a jury determination of the facts necessary to punishment unless conceded or unless that right is waived knowingly, voluntarily and intelligently. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

I agree with the principal opinion that this Court already has determined that under Missouri law, on remand, Mr. Nunley was not entitled to withdraw his previous voluntary agreement to waive his statutory right to jury trial.

I write separately only to address two narrow issues.

## I. Waiver of Constitutional Right to Jury Trial under Halbert

The key issue as to which I disagree with the principal opinion is whether in *Halbert v. Michigan,* 545 U.S. 605, 623–24, 125 S.Ct. 2582, 162 L.Ed.2d 552 (2005), the United States Supreme Court established that, in pleading guilty, one waives only those constitutional rights that are inconsistent with a guilty plea such as, in this case, the right to trial by jury on guilt but that one *does not* thereby waive one's right to a jury trial on the facts necessary to punishment, and that one cannot waive such a right *as to punishment* before it is recognized.[1]

In *Halbert,* the defendant was denied the right to counsel on appeal under a statute that denied counsel to most of those who pleaded guilty or *nolo contendere.* 545 U.S. at 612–13, 125 S.Ct. 2582. Michigan contended that even if the defendant had a constitutional right to appointed counsel, he necessarily waived that right because he knew that a Michigan statute provided that a defendant who pleads guilty or *nolo contendere* will not receive the assistance of counsel in applying for discretionary appeal. *Michigan Comp. Laws Ann. § 770.3a (West 2000).* Therefore, by pleading *nolo contendere* he had to know that the statute would deny him a right to court-appointed counsel,

---

1. These issues are discussed in more detail in the dissenting opinion in *State ex rel. Taylor v.* *Steele,* 341 S.W.3d 634 (Mo. banc 2011) .

resulting in an implied waiver. *Halbert,* 545 U.S. at 623, 125 S.Ct. 2582.

*Halbert* held that Mr. Halbert could not have waived his *constitutional* right to counsel on appeal because, "[a]t the time he entered his plea, Halbert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel he could elect to forgo." *Id.*

In so holding, *Halbert* rejected the argument made by the principal opinion, for it is the same argument made by Justice Thomas in dissent. Justice Thomas said that assuming Mr. Halbert did have a statutory right to counsel on appeal, he waived it when he decided to plead guilty with knowledge that the consequence likely would be that he would not get counsel on appeal. *Id.* at 637–43, 125 S.Ct. 2582 (Thomas, J., dissenting).

The principal opinion's argument in this case similarly fails if one cannot constitutionally condition the exercise of the right to a jury trial of punishment on whether one waives a jury trial on guilt, and that is what Missouri law provided at the time of Mr. Nunley's choice to waive a jury trial. In fact, even Justice Thomas recognized, "Whether Michigan law provides for such counsel says nothing about whether a defendant possesses (and hence can waive) a federal constitutional right to that effect.

That Michigan, as a matter of state law, prohibited Halbert from receiving appointed appellate counsel if he pleaded guilty or no contest, is irrelevant to whether Halbert had (and could waive) an independent federal constitutional right to such counsel." [2] *Id.* at 640, 125 S.Ct. 2582. Here, Mr. Nunley did not know he had, and therefore did not waive, his Sixth Amendment right to jury sentencing, for that right had not yet been recognized at the time of his plea.

As the principal opinion notes, Mr. Nunley does not raise this issue on appeal. Because this Court is addressing this issue in the companion case of *State ex rel. Taylor v. Steele,* 341 S.W.3d 634, 650–51; *Id.,* dissenting opinion of Judge Stith, at 667–69 (Mo. banc 2011), also handed down this date, and because Mr. Nunley would be entitled to raise this issue in a separate petition for writ of habeas corpus in light of our decision in *Taylor,* I believe it appropriate to address it here, to the extent applicable, for a waiver of the statutory right to jury trial simply is a separate issue from whether there is a valid waiver of the constitutional right to jury trial. I do agree with the principal opinion that Mr. Nunley would have a right to make a knowing, voluntary and intelligent waiver

---

**2.** *See also Smith v. Yeager,* 393 U.S. 122, 125, 89 S.Ct. 277, 21 L.Ed.2d 246 (1968) (the fact that counsel said he was not sure whether there was a right to an evidentiary hearing in habeas corpus cases but if so he relinquished it did not constitute a waiver, for "[w]hatever counsel's reasons for this obscure gesture of noblesse oblige, *we cannot now ... presume that he intentionally relinquished a known right or privilege, Johnson v. Zerbst,* 304 U.S. 458, 464 (58 S.Ct. 1019, 82 L.Ed. 1461), *when the right or privilege was of doubtful existence at the time of the supposed waiver* "); *See also People v. Montour,* 157 P.3d 489, 492 (Colo. 2007) (Colorado statute could not constitu-

tionally link the waiver of a jury trial on punishment to the waiver of a jury trial on guilt because that would make such a waiver automatic. While a defendant may waive jury fact-finding during the punishment phase, *Blakely* requires that waiver to be knowingly, intelligently and separately waived); *Piper,* 709 N.W.2d at 821–22 (Sabers, J., dissenting) ("the waiver of a substantive right presupposes the existence of the right in the first place" so that because the required factual findings were not admitted by the defendant or found by a jury, the death sentence imposed by the judge was in violation of defendant's Sixth Amendment rights).

of his constitutional right to jury trial, however, should he choose to do so.

## II. Blakely *Clarifies that a Defendant Who Pleads Guilty has a Separate Right to Jury Trial of Punishment Unless Waived*

I also write separately to clarify an issue that is confused unnecessarily by the principal opinion's citation to cases it says support the proposition that pleading guilty in itself waives one's right to jury trial.[3] The cited cases do predict erroneously that the United States Supreme Court will so hold because they were decided prior to the United States Supreme Court's decision in *Blakely*. *Blakely* clarified what was implicit in the holdings of *Apprendi* and *Ring*; that even those who plead guilty have a separate right to jury trial on punishment—unless, of course, as discussed in detail above, that right is waived knowingly, voluntarily and intelligently. *Blakely*, 542 U.S. at 305–06, 124 S.Ct. 2531.

Indeed, the only one of the cases cited by the principal opinion that acknowledges *Blakely* explicitly holds that any statute that does not recognize the independent right of a defendant to jury fact-finding as to punishment after having pleaded guilty is unconstitutional. *Piper*, 709 N.W.2d at 803 ("We agree with Piper's argument that under *Ring*, a capital sentencing scheme would be unconstitutional if it prevented a defendant who pleaded guilty from having alleged aggravating circumstances found by a jury").

This confusion appears to result from the principal opinion's initial conflating of its discussion of the question of a right to a jury trial of the facts necessary to punishment from the question of whether that right has been waived knowingly, voluntarily and intelligently, for when the principal opinion later separately addresses the issue of a constitutional right to jury sentencing, it correctly notes that "[i]n *Blakely*, the United States Supreme Court extended *Ring* by declaring that the Sixth Amendment right to jury sentencing applies even where a defendant pleads guilty. 542 U.S. at 305–06, 124 S.Ct. 2531." *Op.* at 625. *Accord, Taylor*, 341 S.W.3d 634, 640 ("Subsequent to this Court's holding in *Whitfield*, the United States Supreme Court extended the reach of *Ring* by declaring in *Blakely v. Washington*, 542 U.S. 296, 305–06 [124 S.Ct. 2531, 159 L.Ed.2d 403] (2004), that the Sixth Amendment right to jury sentencing applies even when a defendant pleads guilty").

Further, to the extent that the principal opinion suggests that this Sixth Amendment issue was not preserved by Mr. Nunley because he does not cite to *Blakely*, I disagree. While a citation to *Blakely* is rather inexplicably absent, the brief does cite to *Apprendi* and *Ring* for the very proposition that he has a right to jury sentencing as to punishment, and those are the very cases cited by *Blakely* as requiring a jury to determine the facts necessary to impose punishment even when one pleads guilty, and the state cites to *Blakely* in its response to Mr. Nunley's argument. I therefore would reach the issues

**3.** *See op.* at 620–21, 622, *citing Colwell v. State*, 118 Nev. 807, 59 P.3d 463, 473 (2002); *Moore v. State*, 771 N.E.2d 46, 49 (Ind.2002); *South Carolina v. Downs*, 361 S.C. 141, 604 S.E.2d 377, 380 (2004); *State v. Piper*, 709 N.W.2d 783, 806–807 (S.D.2006); *Sanchez v. Superior Court*, 102 Cal.App.4th 1266, 126 Cal.Rptr.2d 200 (2002). In fact, as discussed in the text above, all but *Piper* were decided

either before *Blakely* or so soon after *Blakely* was handed down in 2004 and they did not take account of *Blakely*'s holding. *Piper* actually holds that, in light of *Blakely*, it would violate the constitution to not give a defendant the opportunity to try punishment to the jury, or to waive that right, even when the defendant has chosen to plead guilty, as noted in the text. *Piper*, 709 N.W.2d at 803.

of whether one can waive a constitutional right to jury trial of punishment and whether Mr. Nunley did so here.

In sum, I agree with the principal opinion that, *if* one can waive a constitutional right to a jury determination of the facts necessary to punishment before that right has been recognized, then Mr. Nunley's concession in his brief, and in his post-conviction plea hearing before Judge O'Malley is sufficient to establish that he did so, but I believe that, under *Halbert,* such a waiver could not occur before the right was recognized.